IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION

**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

APR 24 2003

JAMES W. McCORMACK, CLERK
By:_____
DEP CLERK

THE CROSS COUNTY BANK, GUARDIAN
OF THE ESTATE OF COURTNEY ESKEW,
and HELEN KENNON, GUARDIAN OF THE
PERSON OF COURTNEY ESKEW                                    PLAINTIFFS

VS.                    NO. CV-2003-57

2-03 CV-00056 SWW

UNION PACIFIC RAILROAD COMPANY,
BRUCE BROWN and CHARLES FELKINS                            DEFENDANTS

This case assigned to District Judge _Wright_
**NOTICE OF REMOVAL** and to Magistrate Judge _Cusineau_

TO:    Mr. Vernon L. Horton
       Cross County Circuit Clerk
       705 E. Union St.
       Wynne, AR   72396

       Mr. B. Michael Easley
       Post Office Box 1115
       Forrest City, Arkansas   72336-1115

COME NOW the Defendants, Union Pacific Railroad Company, Bruce Brown and Charles

Felkins ("Defendants"), pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, and hereby give notice of

the removal of this action to the United States District Court for the Eastern District of Arkansas,

Eastern Division.  As grounds for this removal, the Defendants state as follows:

**Procedural Matters**

1.      This action was filed in the Circuit Court of Cross County, Arkansas on  April 2,

2003, as case No. CV-2003-57.  Copies of the Summons, Complaint, the Answer and Motion to

Dismiss Various Allegations of the Plaintiffs' Complaint and Brief in Support, which constitute all

DOCUMENT
NUMBER

1

process, pleadings, and orders which have been filed or received in this action, are filed with this Notice of Removal as Exhibit 1. The Defendants in this action were served with the Summons and Complaint on or after April 7, 2003.

2.      The Defendants are filing this Notice of Removal within the thirty-day period prescribed by 28 U.S.C. § 1446(b).

### The Diversity Jurisdiction of this Court

3.      At the time of the filing of the Complaint, the Plaintiffs were, and at the present time, are citizens and residents of the State of Arkansas.

4.      At the time of the commencement of this action,  Separate Defendant Union Pacific Railroad Company ("Union Pacific") was, and at the present time remains, a Delaware Corporation with its principal place of business in Omaha, Nebraska. Accordingly, for purposes of determining diversity of citizenship, Separate Defendant Union Pacific is a citizen of the State of Delaware and the State of Nebraska.

5.      Separate Defendant Bruce Brown ("Brown") was in the management of Separate Defendant Union Pacific, serving as Director of Track Maintenance, until he retired on April 30, 2001. Brown was retired when this accident occurred. At the time of the filing of the Complaint, Brown was, and at the present time is, a resident and citizen of the State of Arkansas.

6.      Separate Defendant Charles Felkins ("Felkins") is in the management of Separate Defendant, Union Pacific, serving as Manager of Industry and Public Projects. At the time of the filing of the Complaint, Felkins was, and at the present time is, a resident and citizen of the State of Arkansas.

7.      The Separate Defendants Brown and Felkins are nominal defendants who have been

fraudulently joined in the Circuit Court action for the sole purpose of defeating federal diversity jurisdiction. Neither Brown nor Felkins had any direct involvement in this grade crossing accident. Neither Brown nor Felkins owed a legal duty to these Plaintiffs. Additionally, neither Brown nor Felkins have any personal liability to these Plaintiffs in their capacities as management level employees of Union Pacific. The Plaintiffs may not divest this Court of diversity jurisdiction by joining as defendants two non-diverse parties against whom they have no cognizable claims.

8.      Accordingly, this action may be removed to this Court by the Defendants pursuant to 28 U.S.C. § 1441. This is a civil action over which this Court has original diversity jurisdiction under 28 U.S.C. § 1332, and the amount in controversy exceeds $75,000.00.

9.      A copy of the Notice of Filing of Notice of Removal is attached hereto as Exhibit 2. Promptly after filing this action, the Defendants will serve the Notice of Removal on the Plaintiffs and will file a copy with the Circuit Court of Cross County, Arkansas, as required by 28 U.S.C. § 1446(d).

10.     All Defendants, whether served or not, consent to and join in this removal.

WHEREFORE, Defendants pray that the Circuit Court action be removed to the United States District Court for the Eastern District of Arkansas, Eastern Division.

Dated this ____ day of _____, 2003.

Respectfully submitted,

WILLIAM H. SUTTON (59018),
SCOTT H. TUCKER (87176) and
JOSEPH P. McKAY (99006)
2000 Regions Center
400 West Capitol Avenue
Little Rock, Arkansas  72201-3493
501-376-2011

Attorneys for Defendants Union Pacific
Railroad Company, Bruce Brown and
Charles Felkins

By: _____
   SCOTT H. TUCKER, #87176

## CERTIFICATE OF SERVICE

   I hereby certify that a copy of the above and foregoing has been served on the following counsel of record by placing a copy of same in the United States mail, properly addressed and postage pre-paid this _____ day of _____, 2003:

Mr. B. Michael Easley
Post Office Box 1115
Forrest City, Arkansas 72336-1115

_____
SCOTT H. TUCKER

# EXHIBIT 1

# (PLEADINGS ATTACHED)

IN THE CIRCUIT COURT OF CROSS COUNTY, ARKANSAS
CIVIL DIVISION

**FILED**

**APR 23 '03**

THE CROSS COUNTY BANK, GUARDIAN
OF THE ESTATE OF COURTNEY ESKEW,
and HELEN KENNON, GUARDIAN OF THE
PERSON OF COURTNEY ESKEW

VERNON L. HORTON
CLERK AND EX-OFFICIO RECORDER
CROSS COUNTY, ARKANSAS

BY ~Rhonda Sullivan~ D.C.

**PLAINTIFFS**

VS.                                             NO. CV-2003-57

UNION PACIFIC RAILROAD COMPANY,
BRUCE BROWN and CHARLES FELKINS                              **DEFENDANTS**


## ANSWER AND MOTION TO DISMISS VARIOUS ALLEGATIONS OF PLAINTIFFS' COMPLAINT

Come now the Defendants, Union Pacific Railroad Company, Bruce Brown, and Charles

Felkins, and for their Answer And Motion To Dismiss Various Allegations of Plaintiffs' Complaint,

state:

1.      The Defendants admit that Union Pacific Railroad Company is a foreign corporation

organized under the laws of the State of Delaware and qualified to do business in the State of

Arkansas. The Defendants admit that Bruce Brown was at all times relevant to this matter a resident

of Lonoke County, Arkansas.  The Defendants admit that Charles Felkins is a Union Pacific

employee and Arkansas resident.  As to the allegations concerning Courtney Eskew, the Cross

County Bank, and Helen Kennon, the Defendants are without sufficient information to admit or deny

these allegations and therefore deny them. The Defendants deny the remaining allegations contained

within paragraph 1 of the Plaintiffs' Complaint.

2.      The Defendants admit that on or about May 22, 2001, Plaintiff Courtney Eskew was

operating a vehicle proceeding North on Wilson Street in Wynne, Arkansas. The Defendants admit

that Courtney Eskew attempted to cross the Union Pacific tracks when her vehicle was struck by a Union Pacific train. The remaining allegations contained within paragraph 2 of the Plaintiffs' Complaint are denied.

3.    The Defendants admit the allegations contained within paragraph 3 of the Plaintiffs' Complaint.

4.    The Defendants are without sufficient information to admit or deny the allegations contained within paragraph 4 of the Plaintiffs' Complaint and therefore deny them.

5.    The allegations contained within paragraph I of the Plaintiffs' Complaint are denied as are each of the subparagraphs contained thereunder.

6.    The allegations contained within paragraph I(A) of the of the Plaintiffs' Complaint are denied as are each of the subparagraphs contained thereunder.

7.    Pleading affirmatively, the allegations contained within paragraphs I(A)(1) and I(A)(1)(a)-(f) should be dismissed pursuant to A.R.C.P. 12(b)(6) for failing to state facts upon which relief can be granted. The Defendants had no legal duty to provide motorists with "adequate sight distance down the roadway to determine the location of its crossing." Furthermore, Union Pacific had no legal duty to provide any alleged "sight triangles" or "sight distances up or down the tracks." Union Pacific's only duty with regard to clearing vegetation at crossings is to comply with Ark. Code Ann. § 23-12-201.

The allegations that Union Pacific should have reported problems with inadequate sight distances and addressed those problems in cooperative effort with the local road authorities are superseded by Ark. Code Ann. § 23-12-304 and by Ark. Code Ann. § 23-12-1002 *et seq.* Furthermore, the allegations of inadequate training of Union Pacific employees should be dismissed

-2-

as preempted pursuant to 49 U.S.C. § 20106 and by 49 CFR §§ 217, 218, and 240 *et seq.* In short, Union Pacific has no such duties as alleged by the Plaintiffs in these paragraphs.

8.     Pleading affirmatively, the allegations contained within I(A)(1)(e) should be dismissed for failing to state facts upon which relief can be granted pursuant to A.R.C.P. 12(b)(6). In addition, the allegations of intentional misrepresentation and fraud in this subparagraph and in all other paragraphs should be dismissed for lack of standing, for lack of any legal duty owed by Union Pacific to the Plaintiffs, for failure to plead the fraud claim with particularity as required by A.R.C.P. 9(b), and for failing to satisfy the *Wilson v. Allen*, 305 Ark. 582, 810 S.W.2d 42 (1991) fraud pleading requirements.

9.     Pleading affirmatively, the allegations contained in I(A)(2) should be dismissed as being superseded by Ark. Code Ann. § 23-12-1002 *et seq.* In addition, because the crossing was constructed many years ago, the claim of improper construction of the crossing is barred by the statute of limitations.

10.     Pleading affirmatively, paragraphs I(A)(2) and I(A)(2)(a)-(f) should be dismissed for failure to state facts upon which relief can be granted pursuant to A.R.C.P. 12(b)(6). In addition, these paragraphs should be dismissed for lack of standing, for lack of any legal duty owed by Union Pacific to the Plaintiffs, and as being preempted by 49 U.S.C. § 20106 and by 49 CFR Part 213 *et seq.*

11.     Pleading affirmatively, the allegations contained in paragraphs I(A)(3), I(A)(3)(a) and (b) should be dismissed for failing to state facts upon which relief can be granted pursuant to A.R.C.P. 12(b)(6), for lack of standing, and for lack of any legal duty owed by Union Pacific to the Plaintiffs. Specifically, Ark. Code Ann. § 27-67-214(b) provides that a railroad company has no

duty of maintenance beyond the ends of the crossties. In addition, because the height of the crossing has existed in its current state for many years, these allegations are barred by the statute of limitations.

12.    Pleading affirmatively, the allegations contained in paragraph I(A)(4) should be dismissed for failing to state facts upon which relief can be granted pursuant to A.R.C.P. 12(b)(6). With the exception of crossbuck signs, Union Pacific is under no legal duty to ensure that the railroad crossing was marked "with sufficient information." The duty, if any, for advance warning signs, pavement markings, and any other such markings falls upon the governmental authority with jurisdiction over the roadway. Furthermore, the allegations in paragraph I(A)(4) should be dismissed because Union Pacific has no legal duty, authority, or jurisdictions to "mark" the crossing. That duty is vested in the Arkansas State Highway Commission by Ark. Code Ann. § 23-12-304(c) which provides in part:

> In view of the above, the Arkansas State Highway Commission is hereby designated as the sole public body to deal with and shall have exclusive jurisdiction over, the location and construction of new, and the improving and protecting of new and existing street, road, and highway railroad crossings in Arkansas.

In short, Union Pacific has no such duties as alleged by the Plaintiffs in this paragraph.

13.    Pleading affirmatively, the allegations contained in paragraphs I(A)(4)(a), I(A)(4)(b), and I(A)(4)(e) should be dismissed for failing to state facts upon which relief can be granted pursuant to A.R.C.P. 12(b)(6). The Manual on Uniform Traffic Control Devices imposes no legal duty upon Union Pacific. In addition, Union Pacific has no legal duty, authority, or jurisdiction to install advance warning signs, or any other advance warning markings, on the roadway. Furthermore, these allegations should be dismissed as being superseded by Ark. Code Ann. § 23-12-304 and by Ark.

-4-

Code Ann. § 23-12-1002 *et seq.*

14.    Pleading affirmatively, the allegations contained in paragraphs I(A)(4)(c) and I(A)(4)(d) should be dismissed for failing to state facts upon which relief can be granted pursuant to A.R.C.P. 12(b)(6).  The allegations should also be dismissed as being superseded by Ark. Code Ann. § 23-12-304 and by Ark. Code Ann. § 23-12-1002 *et seq.*  In addition, these allegations should be dismissed as being preempted by 49 U.S.C. § 20106 *et seq.* because the crossbuck signs at this crossing had been installed with federal funds.

15.    Pleading affirmatively, the allegations contained in paragraph I(A)(5) of Plaintiffs' Complaint should be dismissed pursuant to A.R.C.P. 12(b)(6) for failing to state facts upon which relief can be granted.

16.    Pleading affirmatively, the allegations contained in paragraph I(A)(5)(a) of Plaintiffs' Complaint should be dismissed pursuant to A.R.C.P. 12(b)(6) for failing to state facts upon which relief can be granted.  Union Pacific had no legal duty to provide motorists with adequate "sight distances."  Union Pacific had no legal duty concerning the "crossing geometry."  The claims in this paragraph relating to construction are barred by the statute of limitations.  With the exception of crossbuck signs, Union Pacific is under no legal duty to ensure that the railroad crossing has other "signage, markings, and protective devices."  The duty, if any, for advance warning signs, pavement markings, and any other such markings falls upon the governmental authority with jurisdiction over the roadway.  Moreover, these allegations should be dismissed because Union Pacific has no legal duty, authority, or jurisdiction to "mark the crossing."  That duty is vested in the Arkansas State Highway Commission by Ark. Code Ann. § 23-12-304(c) which provides in part:

In view of the above, the Arkansas State Highway Commission is

-5-

hereby designated as the sole public body to deal with and shall have exclusive jurisdiction over the location and construction of new and the improving and protecting of new and existing street, road, and highway railroad crossings in Arkansas.

17.    The allegations contained within paragraph I(B) of Plaintiffs' Complaint are denied as are each of the subparagraphs contained thereunder.

18.    Pleading affirmatively, the allegations contained in paragraphs I(B), I(B)(1), I(B)(1)(a), I(B)(3), I(B)(3)(a), I(B)(4), and I(B)(4)(a) should be dismissed as having been superseded by Ark. Code Ann. § 23-12-410. Specifically, Union Pacific is under no duty to "give reasonable and timely warning of the approach of its train" except as provided in Ark. Code Ann. § 23-12-410.

19.    Pleading affirmatively, the allegations contained in paragraphs I(B)(2) and I(B)(2)(a) should be dismissed for failing to state facts upon which relief can be granted pursuant to A.R.C.P. 12(b)(6).

20.    Pleading affirmatively, the allegations contained in paragraphs I(B)(5) and I(B)(5)(a) should be dismissed for failure to state facts upon which relief can be granted pursuant to A.R.C.P. § 12(b)(6). These allegations should also be dismissed as being preempted by the Locomotive Inspection Act, 49 U.S.C. §§ 20701 *et seq.* (1997), by 49 CFR § 229.129, and for lack of any legal duty owed by Union Pacific to the Plaintiffs.

21.    Pleading affirmatively, the allegations contained in paragraph I(B)(5)(b) of the Plaintiffs' Complaint regarding the improper training of train crew members should be dismissed pursuant to A.R.C.P. 12(b)(6) for failing to state facts upon which relief can be granted. This claim and all other claims of improper training should be dismissed as being preempted by 49 U.S.C. § 20106 and 49 CFR Parts 217, 218, and 240 *et seq.*

22.     Pleading affirmatively, the allegations contained in paragraphs I(B)(6) and I(B)(6)(a) should be dismissed pursuant to A.R.C.P. 12(b)(6) for failing to state facts upon which relief can be granted.  These allegations should also be dismissed for lack of standing and for lack of any legal duty owed by Union Pacific to the Plaintiffs.  In addition, the allegations that Union Pacific failed to punish its employees for horn violations are preempted by 49 U.S. C. § 20106 and by 49 CFR Parts 217, 218 and 240 *et seq.*

23.     Pleading affirmatively, the allegations of intentional misrepresentation and fraud in paragraph I(B)(6)(a) and in other paragraphs throughout the Complaint should be dismissed for lack of standing, for lack of any legal duty owed by Union Pacific to the Plaintiffs, for failure to plead the fraud claim with particularity as required by A.R.C.P. 9(b), and for failure to satisfy the fraud pleading requirements of *Wilson v. Allen,* 305 Ark. 582, 810 S.W.2d 42 (1991).

24.     Pleading affirmatively, the allegations contained within paragraph I(B)(7) of the Plaintiffs' Complaint should be dismissed pursuant to A.R.C.P. 12(b)(6) for failing to state facts upon which relief can be granted.  Moreover, this claim should also be dismissed as being superseded by Ark. Code Ann. § 23-12-402 and as being preempted by 49 CFR § 229.125.

25.     The allegations contained within paragraph I(C) of the Plaintiffs' Complaint are denied as are each of the subparagraphs contained thereunder.

26.     Pleading affirmatively, the allegations contained within paragraphs I(C)(1), I(C)(1)(a), and I(C)(1)(b) should be dismissed pursuant to A.R.C.P. 12(b)(6) for failure to state facts upon which relief can be granted.

27.     Pleading affirmatively, the allegations contained in paragraph I(C)(3), I(C)(3)(a), and all other paragraphs alleging a "specific local hazard" should be dismissed as a matter of law because

-7-

only a State can designate a "local safety hazard" and the State of Arkansas has not done so.

The allegations that Union Pacific "has a duty to identify specific local hazards and instruct its train crews and all other employees to identify specific local hazards" should be dismissed for failure to state facts upon which relief can be granted pursuant to A.R.C.P. § 12(b)(6). In addition, the improper training allegations should be dismissed as being preempted pursuant to 49 U.S. C. § 20106 and by 49 CFR Parts 217, 218, and 240 *et seq.*

28.    Pleading affirmatively, the allegations contained in paragraph I(C)(4) and I(C)(4)(a) of the Plaintiffs' Complaint should be dismissed for failure to state facts upon which relief can be granted pursuant to A.R.C.P. § 12 (b)(6), for lack of standing, and for lack of any duty owed by Union Pacific to the Plaintiffs.

29.    Pleading affirmatively, the allegations contained in paragraphs I(C)(5) and I(C)(5)(a) should be dismissed for failure to state facts upon which relief can be granted pursuant to A.R.C.P. § 12 (b)(6), for lack of standing, and for lack of any duty owed by Union Pacific to the Plaintiffs. These allegations of excessive speed are also preempted by 49 U.S. C. § 20106 and by 49 CFR § 213.9.

30.    Pleading affirmatively, the allegations contained in paragraphs I(C)(6) and I(C)(6)(a) should be dismissed pursuant to A.R.C.P. 12(b)(6) for failing to state facts upon which relief can be granted. The allegations that the train crew was not properly instructed and trained should be dismissed as being preempted by 49 U.S.C. § 20106 and 49 CFR Parts 217, 218, and 240 *et seq.*

31.    Pleading affirmatively, the allegations contained in paragraphs I(C)(7), I(C)(7)(a) and I(C)(7)(b) that the train crew was not properly instructed and trained should be dismissed as being preempted by 49 U.S.C. § 20106 and 49 CFR Parts 217, 218, and 240 *et seq.*

The allegations contained herein alleging a "specific local hazard" should be dismissed as a matter of law because only a State can designate a "local safety hazard" and the State of Arkansas has not done so.

32.    Pleading affirmatively, the allegations contained in paragraph I(C)(8) and the subparagraphs thereunder should be dismissed for failure to state facts upon which relief can be granted pursuant to A.R.C.P. 12(b)(6), for lack of standing, and for lack of any duty owed by Union Pacific to the Plaintiffs.  In addition, these allegations should be dismissed as being superseded by Ark. Code Ann. § 23-12-304 and by Ark. Code Ann. § 23-12-1002 *et seq.*

33.    Pleading affirmatively, the allegations contained in paragraph I(C)(9) and the subparagraphs contained thereunder should be dismissed for failure to state facts upon which relief can be granted pursuant to A.R.C.P. 12(b)(6), for lack of standing, and for lack of any duty owed by Union Pacific to the Plaintiffs.

34.    The allegations contained in paragraph I(D) of Plaintiffs' Complaint are denied as are each of the subparagraphs contained thereunder.

35.    Pleading affirmatively, the allegations contained within paragraph I(D)(1) and the subparagraphs contained thereunder should be dismissed for failure to state facts upon which relief can be granted pursuant to A.R.C.P. 12(b)(6), for lack of standing, and for lack of any duty owed by Union Pacific to the Plaintiffs.   The allegations that the train crews and other employees were not properly supervised, monitored, trained, and educated should be dismissed as being preempted pursuant to 49 U.S.C. § 20106 and by 49 CFR Parts 217, 218 and 240 *et seq.*

36.    Pleading affirmatively, the allegations contained in paragraphs I(D)(2), I(D)(2)(a), and I(D)(2)(b) should be dismissed for failure to state facts upon which relief can be granted

-9-

pursuant to A.R.C.P. 12(b)(6), for lack of standing, and for lack of any duty owed by Union Pacific to the Plaintiffs. In addition, these allegations should be dismissed as being superseded by Ark. Code Ann. § 23-12-201 and Ark. Code Ann. § 23-12-1002 *et seq.* These allegations should also be dismissed because a claim of negligent entrustment does not exist when the doctrine of *respondeat superior* applies.

37. Pleading affirmatively, the allegations contained in paragraphs I(D)(3), I(D)(3)(a), and all of the paragraphs alleging a "specific local hazard" should be dismissed as a matter of law because only a State can designate a "local safety hazard" and the State of Arkansas has not done so.

The allegations that Union Pacific "has a duty to identify specific local hazards and instruct its train crews and other employees to identify specific local hazards" should be dismissed for failure to state facts upon which relief can be granted pursuant to A.R.C.P. 12(b)(6). In addition, the improper training allegations should be dismissed as being preempted pursuant to 49 U.S.C. § 20106 and by 49 CFR Parts 217, 218, and 240 *et seq.*

38. Pleading affirmatively, the allegations contained in paragraph I(D)(4) of Plaintiffs' Complaint and the subparagraphs contained thereunder should be dismissed for failure to state facts upon which relief can be granted pursuant to A.R.C.P. 12(b)(6), for lack of standing, and for lack of any legal duty owed by Union Pacific to the Plaintiffs.

39. Pleading affirmatively, the allegations of intentional misrepresentation and fraud contained in paragraph I(D)(4)(b) should be dismissed for lack of standing, for lack of any legal duty owed to the Plaintiffs, for failure to plead the fraud claim with particularity as required by A.R.C.P. 9(b) and for failing to satisfy the *Wilson v. Allen* fraud pleading requirements.

40. Pleading affirmatively, the allegations contained in paragraph I(D)(5) of Plaintiffs'

Complaint and the subparagraphs contained thereunder should be dismissed for failure to state facts upon which relief can be granted pursuant to A.R.C.P. 12(b)(6), for lack of standing, and for lack of any legal duty owed by Union Pacific to the Plaintiffs. These allegations should also be dismissed as having been superseded by Ark Code Ann. § 23-12-304 and by Ark. Code Ann. § 23-12-1002 *et seq.*

41.    Pleading affirmatively, the allegations contained in paragraph I(D)(6) of Plaintiffs' Complaint and the subparagraphs contained thereunder should be dismissed for failure to state facts upon which relief can be granted pursuant to A.R.C.P. 12(b)(6), for lack of standing, and for lack of any legal duty owed by Union Pacific to the Plaintiffs. These allegations should also be dismissed as having been superseded by Ark. Code Ann. § 23-12-304 and by Ark. Code Ann. § 23-12-1002 *et seq.*

42.    Pleading affirmatively, the allegations contained in paragraph I(D)(6)(c) should be dismissed for lack of standing, for lack of any legal duty owed to the Plaintiffs, for failure to plead the fraud claim with particularity as required by A.R.C.P. 9(b) and for failing to satisfy the *Wilson v. Allen* fraud pleading requirements.

43.    Pleading affirmatively, the allegations contained in paragraph I(D)(7) of Plaintiffs' Complaint and the subparagraphs contained thereunder should be dismissed for failure to state facts upon which relief can be granted pursuant to A.R.C.P. 12(b)(6), for lack of standing, and for lack of any legal duty owed by Union Pacific to the Plaintiffs. In addition, these allegations should be dismissed as being superseded by Ark. Code Ann. § 23-12-304 and by Ark. Code Ann. § 23-12-1002 *et seq.*

44.    Pleading affirmatively, the allegations contained in paragraph I(D)(8) of Plaintiffs'

-11-

Complaint and each of the subparagraphs contained thereunder should be dismissed for failure to state facts upon which relief can be granted pursuant to A.R.C.P. 12(b)(6), for lack of standing, and for lack of any legal duty owed by Union Pacific to the Plaintiffs.  The allegations that the train crews and other employees were not properly supervised and monitored should be dismissed as being preempted pursuant to 49 U.S.C. § 20106 and by 49 CFR Parts 217, 218, and 240 *et seq.*

45.    The allegations contained in paragraph I(E) of the Plaintiffs' Complaint are denied as are each of the subparagraphs thereunder.

46.    Pleading affirmatively, the allegations in paragraph I(E) and each of the subparagraphs thereunder should be dismissed for failure to state facts upon which relief can be granted pursuant to A.R.C.P. § 12(b)(6), for lack of standing, and for lack of any legal duty owed by Union Pacific to the Plaintiffs.

47.    Pleading affirmatively, the allegations contained in paragraphs I(E)(2), I(E)(3), I(E)(4), I(E)(6), I(E)(8), I(E)(10), and I(E)(11) concerning the installation of lights and gates or other improvements to the crossing are superseded by Ark. Code Ann. § 23-12-304 and by Ark. Code Ann. § 23-12-1002 *et seq.* and are preempted by 49 U.S.C. § 20106 in that the crossbuck signs at this crossing had been installed with federal funds.

48.    Pleading affirmatively, the allegations contained in paragraph I(E)(7) and I(E)(11) should be dismissed for failure to state facts upon which relief can be granted pursuant to A.R.C.P. § 12(b)(6), for lack of standing, for lack of any legal duty owed to the Plaintiffs, for failure to plead the fraud claim with particularity as required by A.R.C.P. 9(b) and for failing to satisfy the *Wilson v. Allen* fraud pleading requirements.

49.    The allegations contained within paragraph II of the Plaintiffs' Complaint are denied.

-12-

50. Pleading affirmatively, the allegations contained within paragraph II and each of the subparagraphs contained thereunder should be dismissed for failing to state facts upon which relief can be granted pursuant to A.R.C.P. 12(b)(6), for lack of standing, and for lack of any legal duty owed by Bruce Brown to the Plaintiffs. As a company officer and a person with no involvement in this train-car collision, Bruce Brown can have no liability to these Plaintiffs.

51. Defendants admit that Bruce Brown was employed as the Director of Track Maintenance with Union Pacific Railroad Company before his retirement. The Defendants deny the remaining allegations contained within paragraph II(A) of the Plaintiffs' Complaint.

52. Defendants admit that Bruce Brown was the Director of Track Maintenance for the Wynne Subdivision of the Union Pacific Railroad Company before his retirement. The Defendants admit that the Wynne Subdivision includes the Wilson Street crossing where this accident occurred. The Defendants deny the remaining allegations contained within paragraph II(B) of the Plaintiffs' Complaint.

53. The Defendants admit that Bruce Brown was the Director of Track Maintenance. The Defendants deny the remaining allegations contained within paragraph II(C) of the Plaintiffs' Complaint.

54. Pleading affirmatively, the allegations contained within paragraph II(C) should be dismissed for failing to state facts upon which relief can be granted pursuant to A.R.C.P. 12(b)(6), for lack of standing, and for lack of any legal duty owed by Bruce Brown to the Plaintiffs. As a company officer and a person with no involvement in this train-car collision, Bruce Brown can have no liability to these Plaintiffs.

55. The allegations contained within paragraph II(D) of Plaintiffs' Complaint are denied.

-13-

56.    The allegations contained within paragraph II(E) of Plaintiffs' Complaint are denied.

57.    The allegations contained within paragraph III of Plaintiffs' Complaint are denied as are each of the subparagraphs contained thereunder with the exception of the allegations in subparagraphs (A), (B), and (C) that Charles Felkins is employed by Union Pacific Railroad Company as the Manager of Industry and Public Projects.

58.    Pleading affirmatively, the allegations contained in paragraph III and each of the subparagraphs contained thereunder should be dismissed for failure to state facts upon which relief can be granted pursuant to A.R.C.P. 12(b)(6), for lack of standing, and for lack of any legal duty owed by Charles Felkins to the Plaintiffs.  As a company officer and a person with no involvement in this train-car collision, Charles Felkins can have no liability to these Plaintiffs.

59.    The allegations contained in paragraph IV of the Plaintiffs' Complaint are denied as are each of the subparagraphs contained thereunder.

60.    In response to paragraph V of Plaintiffs' Complaint, the Defendants also request a jury trial.

61.    The prayer of the Plaintiffs' Complaint is denied as are all other allegations in the Plaintiffs' Complaint not specifically admitted herein.

62.    Pleading affirmatively, the Defendants state that for each of the following reasons, the Plaintiffs' punitive damages claims contained throughout the Complaint are unconstitutional and should be dismissed:

a.    Arkansas law has not established a definitive standard for setting the amount of punitive damages and, therefore, an award of punitive damages without requiring Plaintiffs to prove every element beyond a reasonable doubt or, in the alternative, by clear and convincing

evidence, violates defendants' due process rights under the U. S. Constitution, Amend. XIV, and the corresponding applicable due process provisions of the Arkansas Constitution.

b.     Because it is not subject to a predetermined limit, such as maximum multiple compensatory damages or a maximum amount, an award of punitive damages violates defendants' due process rights under the U. S. Constitution, Amend. XIV, and the corresponding applicable due process provisions of the Arkansas Constitution.

c.     An award of punitive damages violates defendants' due process and equal protection rights guaranteed by the U. S. Constitution, Amend. XIV, and the double jeopardy clause of the U. S. Constitution, Amend. V, as incorporated into Amend. XIV, and a jury (1) is not provided a standard of sufficient clarity for determining the appropriateness, or the appropriate size, of a punitive damages award; (2) is not instructed on the limits of punitive damages imposed by the applicable principles of deterrents and punishment; (3) is not expressly prohibited from awarding punitive damages in whole or in part, on the basis of insidiously discriminatory characteristics, including the corporate status of separate defendant Union Pacific Railroad Company; (4) is permitted to award punitive damages under a standard for determining liability for punitive damages that is vague and arbitrary and does not define with sufficient clarity the conduct or mental state that makes punitive damages permissible; (5) is not subject to judicial review on the basis of objective standards; and (6) is not required to consider the character and degree of the alleged wrong.

d.     An award of punitive damages under Arkansas law for the purposes of compensating Plaintiffs for elements of damage not otherwise recognized by Arkansas law violates the defendants' due process rights guaranteed by the U. S. Constitution, Amend. XIV, and by the corresponding applicable provisions of the Arkansas Constitution.

e.     An award of punitive damages under state law without the same protection that is accorded to all criminal defendants, including protection against unreasonable searches and seizures, double jeopardy, self-incrimination, the right to confront adverse witnesses, a speedy trial and the effective assistance of counsel violates defendants' rights under the U. S. Constitution, Amend. XIV and Amends. IV, V and VI, as incorporated into Amend. XIV, and under the corresponding applicable provisions of the Arkansas Constitution.

63.     Pleading affirmatively, the sole proximate cause of the accident was the negligence of the Plaintiffs as follows:

(a)     Courtney Eskew failed to stop at the crossbucks at the crossing;

(b)     Courtney Eskew failed to use ordinary care to look and listen for trains as they approached the crossing;

(c)     Courtney Eskew failed to stop her vehicle for the crossing at a time when the approaching train was sounding its whistle and bell for the crossing and presented an immediate hazard to her;

(d)     Courtney Eskew failed to stop for the crossing although the approaching train was plainly visible and was in hazardous proximity to the crossing;

(e)     The above-mentioned conduct of Courtney Eskew was negligent and in violation of Ark. Code Ann. § 27-51-702;

(f)     Courtney Eskew failed to keep her vehicle under control;

(g)     Courtney Eskew was otherwise negligent in failing to use ordinary care for the operation of her vehicle.

64.     Pleading affirmatively, service and service of process are improper as to Defendant

Charles Felkins.

65.    A Brief in Support of Defendants' Motion to Dismiss Various Allegations of the

Complaint is attached hereto.

WHEREFORE, Defendants Union Pacific Railroad Company, Bruce Brown, and Charles

Felkins pray that the Plaintiffs' Complaint be dismissed, for their costs and all other relief to which

they may be entitled.

WLLIAM H. SUTTON (59018),
SCOTT H. TUCKER (87176 ) and
JOSEPH P. MCKAY (99006)
2000 Regions Center
400 West Capitol Avenue
Little Rock, AR 72201-3493

By: _____

SCOTT H. TUCKER

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been served on the following
counsel of record by placing a copy of same in the United States mail, properly addressed and
postage pre-paid this _____ day of _____, 2003:

Mr. B. Michael Easley
Post Office Box 1115
Forrest City, Arkansas 72336-1115

_____
SCOTT H. TUCKER

-17-

IN THE CIRCUIT COURT OF CROSS COUNTY, ARKANSAS
CIVIL DIVISION

**FILED**
**APR 23 '03**

THE CROSS COUNTY BANK, GUARDIAN
OF THE ESTATE OF COURTNEY ESKEW,
and HELEN KENNON, GUARDIAN OF THE
PERSON OF COURTNEY ESKEW

VERNON L. HORTON
CLERK AND EX-OFFICIO RECORDER
CROSS COUNTY, ARKANSAS
BY ~Rhonda Sullivan~  D.C.

PLAINTIFFS

VS.                                NO. CV-2003-57

UNION PACIFIC RAILROAD COMPANY,
BRUCE BROWN and CHARLES FELKINS                    DEFENDANTS

<u>BRIEF IN SUPPORT OF MOTION TO DISMISS
VARIOUS ALLEGATIONS OF THE PLAINTIFFS' COMPLAINT</u>

A typical Complaint in a railroad grade crossing case will make four or five claims of

negligence. A Plaintiff will usually contend that the crew members failed to sound the locomotive

horn and failed to keep a proper lookout. In addition, a Plaintiff will normally allege that the

crossing where he got hit was abnormally dangerous and required special warnings such as flashing

lights and gates. The Complaint in the instant case is 25 pages long, most of it single-spaced. Many

of the "duties" that Union Pacific and its employees allegedly have were made up by the Plaintiffs.

Most of the "duties" alleged in the Complaint do not exist, while others have been preempted by

federal statute and regulation or superceded by state statute.

Some of the Plaintiffs' claims, such as excessive speed of the train, require the Defendants

to submit affidavits; therefore, these claims will be addressed in a Motion for Partial Summary

Judgment. The instant Motion to Dismiss Various Allegations seeks to have numerous claims

dismissed for a variety of reasons. The Defendants hope that through this Motion to Dismiss, the

issues will be narrowed to those that are recognized at law and that will actually be tried before the

jury.

F:\HOME\TUCKER\eskew\Pleadings\brief in support of motion to dismiss.wpd

## ALLEGATIONS IN THE COMPLAINT

1.    Visibility Obstruction Claims

In paragraphs I(A)(1) and I(A)(5), the Plaintiffs contend that Union Pacific has a duty to clear visibility obstructions from its right-of-way to provide motorists with an adequate sight distance down the roadway to the crossing and an adequate view of the track in both directions and that Union Pacific breached this duty.  Ark. Code. Ann. § 23-12-201 provides that railroad companies must maintain vegetation at public grade crossings so as not to obstruct the view.  The maintenance width is fifty feet on both sides of the centerline of the tracks and the maintenance distance along the tracks is 100 yards from the center of the roadway. *Id.*  This is the standard to which Union Pacific and all other railroad companies in the State of Arkansas are held.  Union Pacific has no duty to provide an "adequate view of the track in both directions" other than by complying with Ark. Code. Ann. § 23-12-201.  If the Plaintiffs believe that Union Pacific has violated this statute, they should say so. Otherwise, this statute supercedes their allegations in paragraph I(A)(1) and I(A)(5).

2.    Improper Training Claims

Over and over in the Complaint, the Plaintiffs contend that Union Pacific is liable for the improper training, supervision, or monitoring of its train crews. These allegations appear in the following paragraphs (and possibly others):

I(A)(1)(d)    UPRR failed to properly train its employees to recognize safety hazards caused by visibility obstructions.

I(B)(2)(b)    UPRR failed to train its maintenance crews and train crews regarding the dangers posed by inadequate sight distances.

I(B)(3)        UPRR has the duty to train its train crews and other employees to identify specific local hazards.

I(B)(3)(a)        UPRR failed to train its train crews and employees to identify specific local hazards.

I(B)(4)(a)        UPRR breached its duty to instruct its crews and other employees concerning preventing accidents at crossings.

I(B)(4)(c)        UPRR breached its duty to instruct supervisors, agents and employees in such a manner to create a belief that the railroad has absolutely no duty to provide safe and adequate crossings for the public.

I(B)(5)(b)        UPRR failed to properly train crews on horn activation.

I(B)(7)        UPRR failed to instruct its train crews on how they should be prepared to brake, slow or stop the train.

I(B)(7)(b)        UPRR failed to instruct its train crews about the duty to slow or stop the train to avoid a specific individual hazard.

I(B)(8)(a)        UPRR failed to supervise and monitor the safety practices of its train crews and maintenance-of-way crews to ensure the safety of the motoring public.

I(B)(8)(b)        UPRR knew that its failure to supervise and monitor the safety practices of its train crews, maintenance-of-way crews and supervisors would result in injury to the motoring public.

I(C)(3)        UPRR has a duty to train crews to identify local safety hazards.

I(C)(3)(a)        UPRR has failed to train its crews to identify specific local safety hazards at crossings.

I(C)(7)(a)-(b)        UPRR failed to train its crews to brake, slow, or stop to avoid a specific local safety hazard and condones failing to slow or stop the train.

I(D)(1)      UPRR failed to properly train, evaluate, and disseminate information to maintenance crews, train crews, and their supervisors regarding inadequate sight distances.

I(D)(2)(a)-(b)  UPRR failed to instruct its employees on safety issues for the motoring public, sight distances, signage, and crossing maintenance.

I(D)(3)(a)    UPRR has failed to train its crews to identify specific local hazards.

I(D)(4)(a)    UPRR has failed to instruct its crews that crossing accidents can be avoided.

I(D)(8)(a)-(b)  UPRR has failed to supervise and monitor the safety practices of train crews, maintenance of way crews, and supervisors of those crews.

All of the allegations regarding improper training of the train crews should be dismissed because the Plaintiffs lack standing to bring these claims and because they are preempted pursuant to the Federal Railroad Safety Act of 1970 (49 U.S.C. § 20106) and 49 CFR Parts 217, 218, and 240 *et seq.*

In these CFR sections, the Federal Railroad Administration promulgated a comprehensive set of standards relating to train crew members' training, certification, and qualifications. These regulations "cover the subject matter" and preempt claims of failure to properly train and instruct. *See* 49 U.S.C. § 20106.

Pursuant to the authority granted by 49 U.S.C. § 20135 (and its statutory predecessor 45 U.S.C. § 431 (I)), the Secretary of Transportation has issued regulations concerning engineer certification. 49 CFR Part 240 Appendix B (1995). The regulations themselves contain an express preemption clause: "By issuance of these regulations, FRA intends to preempt any State law, rule, regulation, or standard governing the same subject matter in accordance with the provisions of § 205

of the Federal Railroad Safety Act of 1970 (45 U.S.C. 434)." 49 CFR § 240.5(a)(1995). Included in these regulations is a specific, detailed scheme setting forth the procedures by which a railroad company must obtain FRA approval of its engineer certification program, its criteria and methodology to be used in selecting supervisors for persons seeking certification, and its program for monitoring train handling conducted by train crews. *See* 49 CFR § 240.1-240.411. The regulations detail the elements of what each program must contain and are quite extensive. Each railroad's plan must address criteria for selection of supervisory and training officials (§ 240.105); for selection of eligible candidates for training and their prior safety history (§§ 240.109, 111, 113, 115, 117, 119); the candidate's vision and hearing acuity (§ 240.121); the candidate's initial and continuing education (§ 240.123); and the criteria for testing knowledge, and skill and operating performance (§ 240.125, 127). These regulations provide, in significant detail, the elements that any training program must entail. Under these regulations, there are specific penalties for non-compliance (§ 240.11) which include fines and civil penalties. In addition to the comprehensive nature of these regulations, case law supports Union Pacific's position that the improper training claims are preempted.

In *Burlington N. Ry. Co. v. Doyle*, 186 F.3d 790 (7th Cir. 1999), the State of Wisconsin enacted a statute requiring crew members to have certain qualifications. Several railroads sued for a declaration that the statute was preempted. The district court held that the part of the statute requiring crew member qualifications was preempted by 49 U.S.C. § 20106 and the regulations issued pursuant to the statute (49 CFR § 240 *et seq.*) On appeal, the Seventh Circuit affirmed this decision and reversed in part on a separate issue. *Id.*

This Court should conclude that the aforesaid federal regulations expressly "occupy the

field" of the training of operators of locomotive engines. Any claim that the train crew was improperly trained fails as a matter of law because of the preemptive effect of the FRSA and the regulations promulgated thereto. *See State v. Wisconsin Cent. Transp. Corp.*, 546 N.W.2d 206, 211 (Wis. App. 1996), *Aff'd,* 562 N.W. 2d 152 (Wis. 1997) (Wisconsin's "conductor law" governing qualifications of conductors was substantially subsumed by federal regulation of locomotive engineers and therefore, "conductor law" was preempted by FRSA). Accordingly, all allegations of improper training should be dismissed as a matter of law.

3.     Fraud Claims

Although the Plaintiffs do not label it as such, they have made several claims of fraud against Union Pacific. These claims are found in the following paragraphs:

> I(A)(1)(e)     UPRR intentionally misrepresented the extent of the problem [vegetation at crossings] by publishing and then acting on false and misleading information concerning the existence of safety hazards caused by visibility obstructions.

> I(E)(7)     UPRR has made a deliberate choice to misinform the public and governmental agencies that UPRR cannot do anything more to protect against grade crossing collisions.

> I(E)(11)     UPRR has intentionally misrepresented crossing conditions and operating practices, concealed other relevant information about safety problems, and obscured the truth about accident causation.

As discussed below, these claims of fraud should be dismissed as a matter of law.

Simply stated, the Plaintiffs have no standing to make these claims. As stated in *Arkansas Carpenter's Health & Welfare v. Phillip Morris,* 75 F. Supp. 2d 936 (E.D. Ark. 1996), "Arkansas follows the traditional and prevailing rule that a plaintiff may not recover for fraud and

misrepresentation directed to a third party." *Id.* at 943.   In addition, the Plaintiffs have failed to plead all of their fraud allegations with the particularity required by A.R.C.P. 9(b), thus requiring dismissal.

The Arkansas Rules of Civil Procedure require:

> In all averments of fraud . . . the circumstances constituting the fraud . . . shall be stated with particularity. *Id.*

A.R.C.P. 9(b) is substantially the same as F.R.C.P. 9(b).  As the Eighth Circuit has repeatedly noted, "circumstances," as specified in Rule 9(b),

> include such matters as the time, place, and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby . . . [C]onclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule.

*Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 549 (8th Cir. 1997) (quoting *Commercial Property Invs., Inc. v. Quality Inns, Int'l., Inc.*, 61 F.3d 639, 644 (8th Cir. 1995)).

The pleading requirements of Rule 9(b) also encompass the need to plead with specificity the critical elements of fraud under Arkansas law.  Plaintiffs' failure to do so is fatal to all fraud allegations in their Complaint.  *See e.g., Allison v. Security Benefit Life Ins. Co.*, 980 F.2d 1213, 1215-16 (8th Cir. 1992) (finding allegations of fraud inadequate where Arkansas requirements for establishing the elements of fraud were not met).  Pursuant to Arkansas law, allegations of fraud must demonstrate:

> (1) the Defendant made a false, material misrepresentation (ordinarily of fact);
>
> (2) the Defendant had knowledge that the representation was false or

asserted a fact which he did not know to be true;

(3) the Defendant intended the Plaintiff should act on the misrepresentation;

(4) the Plaintiff justifiably relied on the misrepresentation; and

(5) the Plaintiff was damaged as a result of such reliance.

*Wilson v. Allen*, 305 Ark. 582, 583-84, 810 S.W.2d 42-43 (1991); *See also Allison*, 980 F.2d at 1216

(applying *Wilson v. Allen*); *McNeil v. Security Benefit Life Ins. Co.*, 864 F. Supp. 93, 95 (E.D. Ark.

1993) (finding fraud allegations did not meet minimum requirements of Arkansas law).

The Plaintiffs' allegations of intentional misreporting and publishing false and misleading information fail to meet the pleading requirements established by Arkansas law. The Plaintiffs never identify any specific alleged misrepresentation and fail to state the required "time, place, and contents of [the] false representation as well as the identify of the person making the misrepresentation." *Parnes*, 122 F.3d at 549. Likewise, the Plaintiffs' fraud claim contains no allegation (nor could it) that Union Pacific intended that the Plaintiffs "should act on the misrepresentation." In addition, the Complaint fails to sufficiently allege that the Plaintiffs "justifiably relied" on the alleged misrepresentations and the false and misleading information. Nor can the Plaintiffs claim that they have been damaged as a result of such reliance. For all of the reasons outlined above, the Plaintiffs' fraud and misrepresentation claims should be dismissed with prejudice.

These same type of fraud and misrepresentation claims were made in *Stevenson v. Union Pac. R. Co.* (USDC, E.D. Ark., Helena Div., Case No. 2:99CV00160WRW). Incidentally, the same attorneys representing the Plaintiffs in *Stevenson* are also the same attorneys representing the

Plaintiffs in this case. In *Stevenson,* the Honorable William R. Wilson dismissed all of the fraud allegations against Union Pacific and Co-Defendant Operation Lifesaver in the Opinions attached hereto as Exhibits 1 and 2.

4.    Construction Claim

In paragraph I(A)(2), the Plaintiffs contend that Union Pacific has not properly constructed the crossing at Wilson Street. It is undisputed, however, that the crossing was constructed many, many years ago. Accordingly, the Plaintiffs' claim about improper construction is barred by the statute of limitations.

5.    Federal Regulation Violations Claims

In paragraphs I(A)(2)(a)-(f), the Plaintiffs state that Union Pacific has a duty to comply with federal regulations regarding track inspections, record keeping, and track maintenance as found in 49 CFR Part 213. While this is true, the Plaintiffs have no standing to enforce these regulations. Rather, the Federal Railroad Administration ensures compliance. Furthermore, Union Pacific owed no legal duty to these Plaintiffs with regard to these federal regulations. This comprehensive set of regulations regarding maintenance of railroad tracks are intended to insure that trains do not derail. The train in this case did not derail, and the Plaintiffs are not within the class of persons for whose safety these regulations were enacted. The comprehensive set of regulations found in 49 CFR Part 213 "occupies the field" of track inspection and maintenance much like 49 CFR Part 240 "occupies the field" with regard to the qualifications of the operators of locomotive engines. As such, the Plaintiffs' claims are preempted by 49 U.S.C. § 20106 and by 49 CFR Part 213.

In addition to the foregoing, the Plaintiffs have done nothing more than list numerous regulations found in 49 CFR Part 213 regarding track inspection and maintenance. In subparagraph

(e), the Plaintiffs contend that Union Pacific breached those duties by failing to properly inspect the track and by failing to make proper documentation. As is frequently the case throughout the Plaintiffs' Complaint, the Plaintiffs fail to state any facts upon which relief can be granted; therefore, these allegations should be dismissed pursuant to A.R.C.P. 12(b)(6).

The Plaintiffs' purpose for alleging that Union Pacific failed to comply with the track safety standards of 49 CFR Part 213 is to claim that the tracks where this accident happened should have been downgraded to a lower class of track with a corresponding lower maximum speed limit. In paragraph I(C)(5) the Plaintiffs contend, as they have in other sections of the Complaint, that the train in this case exceeded the maximum speed as set forth in the federal regulations. Plaintiffs will then contend that Union Pacific was somehow negligent for failing to issue a slow order for these tracks. Speeding and failure to issue a slow order are really the same claims. These allegations are preempted by federal law.

In *Stevenson v. Union Pacific R. Co.*, 110 F. Supp. 2d 1086 (E.D. Ark. 2000), the Plaintiffs in that grade crossing case were represented by these same attorneys and made these same type of allegations. In holding that the Plaintiffs' claims about excessive speed and the need for slow orders were preempted, the *Stevenson* court held:

> Federal law provides, however, that the decision to downgrade a track belongs to the FRA track inspector.
>
> *                *                *
>
> Plaintiffs are attempting to reclassify the track after the fact. This is an impermissible collateral attack on the regulatory process.

*Id. at* 1092.

Plaintiffs have made a similar claim in paragraph I(C)(4) wherein they allege that the train was speeding because it did not have an "in-service event recorder" on the lead locomotive. Plaintiffs made the same claim in *Stevenson v. Union Pacific*, 110 F.Supp.2d 1086 (E.D. Ark. 2000), and it was dismissed.

49 CFR § 229.135 states that all trains traveling over 30 mph must have an operational event recorder on the lead locomotive. Plaintiffs allege that this regulation required Union Pacific to operate the train less than 30 mph due to a defective recorder. Even assuming Plaintiffs' defective recorder claim to be true (which Union Pacific does not concede), 49 CFR § 229.135 does not require the train to slow down. In *Stevenson,* the Court stated that 49 CFR § 229.135 does not require "a train . . . to slow to 30 mph just because it carries a defective recorder." *Id.* at 1093-94. As such, this claim should be dismissed.

For these reasons, paragraphs I(A)(2)(a)-(f), I(C)(4), and I (C)(5), should be dismissed.

6.    Roadway Approach Claims

In paragraph I(A)(3), the Plaintiffs allege that Union Pacific "has a duty to not raise the level of the track from the plane of the adjoining roadway so as to create an elevated or 'humped' crossing" for which Union Pacific should be liable. This claim should be dismissed for two reasons. First, the crossing has existed in its present form for many years such that the statute of limitations bars this claim. Second, Union Pacific has no duty of maintenance with regard to the roadway approaches to the crossing. Rather, Union Pacific's duty is merely to maintain the crossing between the tracks to the ends of the crossties.

In *Untiedt v. St. Louis Southwestern Ry. Co.*, 246 Ark. 941, 440 S.W.2d 251 (1969), the Plaintiffs brought an action against the railroad for damages to his lowboy truck that had become

stuck on a hump in the highway approach to the crossing, part of which was struck by the train. The

Plaintiffs contended that the railroad was liable for the accident due to the steep approaches to the

crossing. The Arkansas Supreme Court dismissed the Plaintiffs' contention as follows:

> We find no merit to Untiedt's contention that the railroad had a duty
> to maintain the highway approaches to the railroad tracks. . . . as we
> interpret this statute [Ark. Stat. Ann. § 73-614], it limits the duty of
> all railroad companies whose lines intersect or cross any of the
> highways of the state to improve all of that part of the roadway
> between their tracks and to the end of the cross ties on each side and
> relieves them from any duty of maintenance beyond the end of the
> cross ties. *Id.* at 440 S.W.2d 255.

Later, in *Cartwright v. Burlington N. R.R. Co.*, 908 F. Supp. 662 (E.D. Ark. 1995), the

Plaintiffs was injured in a grade crossing accident and argued that the geometry of the Jefferson

Street crossing made the crossing's design abnormally dangerous. Id. at 666. After noting that the

City of Luxora constructed the roadway, the court held as follows:

> Under Arkansas law, it seems clear, given the present state of facts,
> that it was (and is) the state's duty, as opposed to Burlington's, to
> insure that the geographical design of the Jefferson Street crossing
> was (and is) reasonably safe. See Ark. Code Ann. § 23-12-1003
> (Michie Supp. 1993); See also, Ark. Code Ann. § 27-67-214(a)
> (Michie 1994). Any ambiguity on this point is removed by
> examining Ark. Code Ann. § 27-67-214(b) (Michie 1994), which
> provides in relevant part:
>
>> It shall be the duty of all railroad companies . . .
>> whose lines intersect or cross any of the highways of
>> the state to improve that part of the roadway *between*
>> *their tracks and to the end of the cross ties on each*
>> *side* . . . and to maintain such crossings in a good state
>> of repair. [Emphasis added by the court].
>
> The Arkansas Supreme Court has construed the language underscored
> as 'reliev[ing] [all railroad companies] from any duty of maintenance
> beyond the end of the cross ties.' *Untied v. St. Louis SW. Ry. Co.*, 246
> Ark. 941, 950, 440 S.W.2d 251, 255 (1969).

Based upon *Untiedt* and the Arkansas statutes cited in the opinion, Judge Eisele held that the railroad had no duty to maintain the roadway approaches to the railroad tracks at the crossing and further held that the railroad could not be held liable for any negligence in the <u>design</u> of the <u>grading</u>, angle of intersection, or the overall state of repair of the roadway/railway intersection. Consequently, the court granted the railroad's summary judgment. Based on these authorities, the Plaintiffs' claim that Union Pacific is liable for a "hump" from the roadway to the crossing should be dismissed as a matter of law.

7.    <u>Pavement Marking\Advance Warning Claims</u>

In paragraph I(A)(4), the Plaintiffs contend that "UPRR ha[s] a duty to the mark the crossings." With the exception of maintaining the crossbuck signs located at the crossing, Union Pacific has no such duty. Ark. Code. Ann. § 23-12-304(c) provides in part:

> In view of the above, the Arkansas State Highway Commission is hereby designated as the sole public body to deal with and shall have exclusive jurisdiction over, the location and construction of new, and the improving and protecting of new and existing street, road, and highway railroad crossings in Arkansas.

After alleging that Union Pacific has a duty that it does not, the Plaintiffs go on in paragraph I(A)(4)(d) to claim that Union Pacific is liable for failing to report to the local road authority the lack of advance warning signs. Exhibit 3 to this Brief is a page from the Manual on Uniform Traffic Control Devices (MUTCD) and contains an example of pavement markings and the round, yellow and black, advance warning signs. Because Union Pacific has no duty of maintenance beyond the ends of the crossties, *Untiedt* and *Cartwright, supra,* the Plaintiffs' negligence claims for lack of pavement markings and advance warning signs cannot be leveled against Union Pacific and should

be dismissed.

8.      Ultra-hazardous Crossing Claim

In paragraph I(A)(5) and the subparagraphs thereunder, the Plaintiffs contend that Union

Pacific has a "duty to maintain the Wilson Street crossing in such a manner as to prevent it from

becoming an ultra hazardous crossing." Moreover, Plaintiffs allege Union Pacific has breached its

duty by allowing "substandard sight distances; crossing geometry and construction; inadequate

signage, markings, and protective devices; and improper maintenance." With the exception of

Plaintiffs' allegations concerning substandard protective devices and improper vegetation

maintenance, Union Pacific does not owe the Plaintiffs the duties described above.[1] These

allegations should be dismissed pursuant to A.R.C.P. 12(b)(6) for failing to state facts upon which

relief can be granted.

Plaintiffs' ultra-hazardous crossing claim is vague, conclusory, and fails to state any facts

upon which relief can be granted. The Plaintiffs do not identify facts which constitute any specific

dangerous condition of the crossing in these particular paragraphs. Because Plaintiffs have alleged

mere conclusions, not facts, these allegations should be dismissed. *See Malone v. Trans-States*

*Lines, Inc.*, 325 Ark. 383, 926 S.W.2d 659 (1996); *Rabalais v. Barnett* 284 Ark. 527, 683 S.W.2d

919 (1985).

---

[1]Plaintiffs' signage and marking clams are not actionable for the reasons stated in
response to paragraph I(A)(4) and I(A)(5). Plaintiffs' geometry claim is not actionable for the
reasons stated in response to paragraph I(A)(3). Plaintiffs' vegetation and sight distances claims
are not actionable for the reasons stated in response to paragraphs I(A)(1) and I(A)(5). Plaintiffs'
construction claims are not actionable for the reasons stated in response to paragraph I(A)(2).
Plaintiffs' track maintenance claims are not actionable for the reasons stated in response to
paragraphs I(A)(2)(a)-(f) .

9.    Horn Violation Claims

In paragraph numbers I(B)(1), I(B)(1)(a), I(B)(3)(a), and I(B)(4)(a) the Plaintiffs contend that Union Pacific failed to give reasonable and timely warning of the train's approach to this crossing by not properly blowing the train's horn. The legal duty imposed upon railroads is found in Ark. Code Ann. § 23-12-410. This statute requires that a bell or whistle be rung or whistled from one-quarter mile before the locomotive reaches the crossing and to be kept ringing or whistling until the locomotive has crossed the road. If, in the four paragraphs listed above, the Plaintiffs are simply alleging that the Defendants failed to comply with this Arkansas statute, then this claim can be litigated. If, on the other hand, the Plaintiffs mean something more, then the allegations should be dismissed as having been superceded by Ark. Code Ann. § 23-12-410. All the Defendants have to do is comply with the statute. If they did comply, negligence cannot attach with regard to the sounding of the train's audible warning devices.

10.    Claims for Deficiencies in Train-mounted Warning Systems

In paragraphs I(B)(5) and I(B)(5)(a), the Plaintiffs contend that there are "deficiencies in train-mounted audible warning systems," that Union Pacific has known about such deficiencies, and has done nothing to resolve or compensate for them. These paragraphs should be dismissed for a number of reasons.

First, Union Pacific is required by state law (Ark. Code Ann. § 23-12-410) and by federal regulation (49 CFR § 229.129) to have a train-mounted audible warning system and to activate it on the train's approach to the crossing. Second, the alleged "deficiencies" and "inherent problems" with train-mounted audible warning systems are not defined by the Plaintiffs. In other words, these allegations should be dismissed for failing to state facts upon which relief can be granted pursuant

to A.R.C.P. 12(b)(6). Third, these claims are not legally cognizable because Union Pacific has no

duty to "resolve such problems" or to "instruct its employees about the deficiencies" as alleged in

the Complaint. Fourth, these claims are preempted by the Locomotive Inspection Act, 49 U.S.C.

§§ 20701 *et seq.* (1997). *See e.g., Law v. General Motors Corp.*, 114 F.3d 908, 910-911 (9th Cir.

1997) (LIA preempts state common-law remedies against railroad manufacturers for injuries arising

out of alleged design defects in their trains); *First Security Bank v. Union Pacific R. Co.*, 152 F.3d

877-880 (8th Cir. 1998) (affirming exclusion of Plaintiffs' expert's testimony that the warning horn

employed by Union Pacific was inadequate). For these reasons, the allegations in paragraphs I(B)(5)

and I(B)(5)(a) should be dismissed.

11.    Crossing Evaluation Claims

        In paragraph I(B)(5), the Plaintiffs claim that Union Pacific "has a duty to evaluate and work

with the state and local road authority to improve safety of the crossing." In paragraph I(B)(7), the

Plaintiffs claim that Union Pacific had a duty to "work[ ] jointly with the local road authorities to

provide adequate and safe crossings for the motoring public." The Plaintiffs make a similar claim

in paragraph I(B)(6) wherein they state that UPRR has a duty to "evaluate" and/or "gather all

reasonable information necessary to determine the need for additional warning devices" and that

Union Pacific breached that duty. Plaintiffs make similar claims in paragraphs I(C)(8) and I(D)(6).

These allegations should be dismissed for several reasons.

        First, the Plaintiffs have no standing to assert these claims. Second, these allegations have

been superceded by Ark. Code Ann. § 23-12-304 and by Ark. Code Ann. § 23-12-1003. Third, and

most importantly, Union Pacific owes no legal duty to the Plaintiffs. This is borne out by the Manual

on Uniform Traffic Control Devices (MUTCD) which has been adopted by the State of Arkansas.

In § 8A-1 of the MUTCD, it states:

> The highway agency or authority with jurisdiction and the regulatory agency with statutory authority, if applicable, jointly determine the need and selection of devices at a highway-rail grade crossing.

The regulatory history of the MUTCD further supports Union Pacific's position. *See* 65 Fed. Reg. 78923, December 18, 2000. The regulatory history states:

> The FHWA [Federal Highway Administration] and the Federal Railroad Administration have reviewed federal law, regulations, and guidance and found that although they encourage voluntary railroad involvement (as members of diagnostic teams where federal funds are involved) in the analysis of need for and type of protection, they do not impose on railroads the responsibility to make, or share in making, determinations of need for or selection of traffic control devices.

*Id.* at 78947.

As can be seen, the "duty" that the Plaintiffs allege Union Pacific had to work with local and state road authorities is not a duty recognized by law. Consequently, Plaintiffs' allegations in paragraphs I(B)(5), I(B)(6), I(B)(7), I(C)(8), and I(D)(6) should be dismissed.

12.    Employee Discipline Claims

In paragraphs I(B)(6) and I(B)(6)(a) the Plaintiffs contend that Union Pacific has a duty to investigate and punish horn violations and has chosen not to do so and is therefore liable for this accident. This claim should be dismissed for the reasons stated in section number two of this Brief because this allegation is a "failure to train" claim in different clothes. In addition, the Plaintiffs have no standing to make such a claim. Matters of discipline are between the employee, his Union and the railroad. They are governed by a Collective Bargaining Agreement, and the Plaintiffs have

no standing to say who should receive discipline or what for.

13.    Prevent Killing Claims

In paragraphs I(C)(1)(a) and (b), the Plaintiffs contend that Union Pacific has a duty to exercise reasonable care to prevent killing or injuring members of the public and that Union Pacific breached that duty which resulted in the "overall unsafe operation of the train in question." These allegations should be dismissed pursuant to A.R.C.P. 12(b)(6) for failing to state facts upon which relief can be granted.

Arkansas is a fact pleading state. *Malone v. Trans-States Lines, Inc.*, 325 Ark. 383, 926 S.W.2d 659 (1996). Facts, not mere conclusions, must be alleged. *Rabalais v. Barnett* 284 Ark. 527, 683 S.W.2d 919 (1985).

These claims of negligence are vague, conclusory, and fail to state any facts upon which relief can be granted. The Plaintiffs do not identify facts which constitute any improper train operations in these particular paragraphs. As such, these allegations should be dismissed. Union Pacific will not list separately each and every allegation in the Complaint which fails to state facts upon which relief can be granted because there are far too many, but instead will rely upon its Motion to point out those allegations.

14.    Local Safety Hazard

In paragraphs I(C)(3), I(C)(3)(a), I(C)(7)(a)-(b), I(D)(3), and I(D)(3)(a), Plaintiffs allege that Defendants had a duty to identify "specific local safety hazards," and that Union Pacific breached this duty. Plaintiffs will then argue that the train was speeding, despite the fact that it was traveling less than the speed limit approved by the Federal Railroad Administration. Defendants have no duty to identify "local safety hazards," and these allegations should be dismissed.

In *Stevenson v. Union Pacific R. Co.*, 110 F.Supp.2d 1086 (E.D. Ark. 2000), the same lawyers as in the current case made the exact claims regarding "local safety hazards." The Court dismissed the claims as a matter of law, holding that only a State can designate a crossing as an "essentially local safety hazard." *Id.* at 1091. Because the State of Arkansas has not designated this crossing as such, Plaintiffs claims should be dismissed.

15.    Negligent Entrustment Claims

In paragraphs I(D)(1), I(D)(4), and I(D)(8) Plaintiffs allege that Union Pacific improperly supervises its maintenance-of-way employees. Plaintiffs make a similar allegations in other paragraphs. Stated another way, Plaintiffs allege that Union Pacific has breached its duty to entrust the maintenance of its crossings to individuals who are properly trained and instructed. The allegations appearing in these paragraphs fail to state facts upon which relief can be granted and should be dismissed pursuant to A.R.C.P. 12(b)(6) because Plaintiffs cannot allege negligent entrustment, supervision, or training of a Defendants' employees when the doctrine of *respondeat superior* applies.

In *Elrod v. G & R Const. Co.*, 275 Ark. 151, 628 S.W.2d 17 (1982), the Arkansas Supreme Court affirmed the dismissal of a negligent entrustment claim, adopting the majority view that when an employer concedes *respondeat superior* for any negligent acts of the employee, the plaintiff cannot pursue a separate claim for negligent entrustment. *See also Bowman v. Norfolk Southern R. Co.*, 832 F.Supp. 1014 (D.S.C. 1993). Accordingly, these negligent entrustment/training/supervision claims should be dismissed.

16.    Willful and Wanton Conduct Claims

In paragraph I(E), the Plaintiffs claim that Union Pacific has engaged in intentional, willful,

and wanton conduct because it (1) "elected to disregard its legal duties owed to the motoring public;" (2) "denied motorists the best possible warning devices;" (3) "deliberately chose not to take any action to cure such defects;" (4) "chose not to take any measures to investigate, remedy or otherwise . . . prevent ... similar accidents;" (5) "misinform[ed] the public and governmental agencies;" (6) "ignore[d] its common law duty to provide safe and adequate grade crossings, in hopes of obtaining public funding of all safety endeavors;" (7) "chose not to approach crossing safety from the standpoint that it cannot and will not do anything in terms of crossing safety unless forced to do so;" (8) "elected to ignore, misrepresent and conceal basic safety needs as part of a plan to cut operating and maintenance costs;" and (9) has no safety program. For the reasons stated in sections seven and eleven of this Brief, these claims are not actionable.   In addition, these allegations fail to state facts upon which relief can be granted and should be dismissed pursuant to A.R.C.P. 12(b)(6).

17.     <u>Safety Program Claim</u>

In paragraph I(E)(9), the Plaintiffs claim that Union Pacific "has no effective crossing safety program that rewards safety initiatives." Even assuming this to be true (which Union Pacific does not concede), this claim is not actionable because Union Pacific has no legal duty to create or administer a crossing safety program that will reward safety initiatives. As a result, this claim must be dismissed.

CONCLUSION

For the foregoing reasons, the Defendants respectfully the Court to grant their Motion to Dismiss Various Allegations of the Plaintiffs' Complaint.

Respectfully submitted,

WILLIAM H. SUTTON (59018),
SCOTT H. TUCKER (87176 ) and
JOSEPH P. MCKAY (99006)
2000 Regions Center
400 West Capitol Avenue
Little Rock, Arkansas  72201-3493
501-376-2011

Attorneys for Union Pacific Railroad Company

By _____
　　　　SCOTT H. TUCKER


## CERTIFICATE OF SERVICE

I, Scott H. Tucker, hereby certify that a copy of the above and foregoing has been served on the following counsel of record by placing same in the United States mail, properly addressed and postage prepaid this 22nd day of April , 2003:

B. Michael Easley
Post Office Box 1115
Forrest City, Arkansas 72336-1115

_____
　　　SCOTT H. TUCKER

**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANS

NOV 6 2000

JAMES W. McCORMACK, CLE
By: _____
DEP. CL.

**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
HELENA DIVISION**

FRANK STEVENSON and REBECCA
HARSHBERGER, Administratrix of the
Estate of MARY E. STEVENSON, Deceased.

                                                    **PLAINTIFFS**

V.                          NO. 2:99-CV-00160 WRW

UNION PACIFIC RAILROAD COMPANY,
and OPERATION LIFESAVER, INC.

                                                    **DEFENDANTS**

## ORDER

### Plaintiffs' Motions to Amend the Complaint:

Pending are Plaintiffs' Motion to Amend Complaint (Doc. No. 61) and Motion to

Substitute Proposed Third Complaint (Doc. No. 73). Defendants Operation Lifesaver, Inc. (OLI)

and Union Pacific (UP) have filed objections (Doc. Nos. 67, 74, and 77). Rule 15 of the Federal

Rules of Civil Procedure provides that "leave shall be freely given" to amend a pleading "when

justice so requires." Pursuant to Rule 15 of the Federal Rules of Civil Procedure, Plaintiffs'

motions are GRANTED. Plaintiffs should file their Third Amended Complaint within ten days

of the date of this Order.

### Defendant Operation Lifesaver, Inc.'s Motion to Dismiss:

Defendant Operation Lifesaver, Inc. (OLI) has filed a Motion to Dismiss (Doc. No. 47).

Plaintiffs have responded (Doc. No. 63) and requested permission to amend their Complaint, and

OLI has replied (Doc. No. 68). The motion to dismiss has been considered in light of the Third

Amended Complaint Plaintiffs wish to file. For the reasons set forth below, OLI's Motion to

Dismiss is GRANTED.



DEFENDANT'S
EXHIBIT



OLI has also filed a Motion to Enlarge Time within which to respond to discovery (Doc. No. 78). Because OLI is dismissed from this action, this motion is denied as moot.

When considering a motion to dismiss, the Court assumes that all the factual obligations contained in the complaint are true. Westcott v. Omaha, 901 F.2d 1486, 1488 (8th Cir.1990). A motion to dismiss will be granted only if it appears beyond doubt that the plaintiff can prove no set of facts which would entitle it to relief. Even assuming that all of the factual allegations against OLI are true, the Plaintiff has failed to state a claim upon which relief can be granted.

### A.    Restatement (Second) of Torts § 324 A

Plaintiffs allege a cause of action against OLI based on § 324A of the Restatement of Torts, recognized by the Arkansas Supreme Court in Wilson v. Rebsamen Ins., Inc., 330 Ark. 687, 957 S.W.2d 678 (1997).

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
>
> (a)    his failure to exercise reasonable care increases the rise of such harm, or
>
> (b)    he has undertaken to perform a duty owed by the other to the third person, or
>
> (c)    the harm is suffered because of reliance on the other or the third person upon the undertaking.

Restatement (Second) of Torts § 324A (1965).

Plaintiffs allege that OLI assumed a "special duty" under § 324A because it holds itself out as an organization dedicated to the safety of the motoring public who come in contact with it, and because that program increases the risk of injury or death to motorists by creating an illusion of safety for the railroad industry's practices.

2

In support of their argument, Plaintiffs cite several cases where trade associations or other groups were found to have assumed a special duty.  See, e.g., Meneely v. S.R. Smith, Inc., 5 P.3d 49 (Wash. App. 2000) (National Spa Pool Institute);  FNS Mortgage Svc. Corp. v. Pacific Gen. Group, Inc., 29 Ca. Rptr. 2d 916 (Cal. App. 1994) (International Association of Plumbing and Mechanical Officials).

The organizations in these cases, however, wielded considerable power over their members.  Many of them issued standards with which the members were required to comply.  Lack of compliance might result in a substantial loss of sales.  Because these organizations required their members to meet certain standards, and were able to punish those who did not comply, the organizations were held to have accepted a special duty to the public to make sure that their standards were adequate.

Plaintiffs allege that, by issuing statements and providing information about safety, OLI sets standards for safety in the railroad industry.  Plaintiffs contend that government agencies and railroads rely on OLI's information and adjust their safety activities accordingly.  However, there is no allegation that OLI is in a position to "punish" railroads or the government for failure to follow any of OLI's "standards."

Alternatively, Plaintiffs allege that OLI created a public perception of safety and that Plaintiffs relied on by assuming that a reasonable driver who looked and listened would not be at risk of being hit by a train at a crossing.

This same type of argument was raised and dismissed by the Honorable James M. Moody in Arkansas Carpenters' Health & Welfare Fund v. Philip Morris Inc., 75 F. Supp. 2d 936, 944 (E.D. Ark. 1999).  There, the plaintiff argued that the defendants, by running advertisements

related to tobacco related health issues, had taken on a special duty "to act as a sort of guardian of

the public health with regard to tobacco products." Id. Judge Moody dismissed the plaintiff's

claim, stating:

> This Court finds no Arkansas case even remotely suggesting that one can assume
> the sort of "special responsibility" plaintiff describes simply by placing
> advertisements or issuing corporate statements.

Id.

Plaintiffs have failed to state a cause of action against OLI based on § 324A of the

Restatement of Torts. Accordingly, OLI's motion to dismiss this claim is GRANTED.

### B.    Fraud

Plaintiffs allege that Defendant OLI fraudulently represented facts, seeking to induce

reliance by the public, railroad employees, and government employees. Plaintiffs further allege

that those parties relied on the misrepresentations and that has contributed to the existence of

unsafe conditions and lack of safety devices at the crossing where Plaintiffs' accident occurred.

Plaintiffs' Substituted Third Complaint states:

> [T]he crossing in this case would have had lights and gates prior to this accident
> but for defendants' interference with the federal safety program funding those
> installations. Those lights and gates would have prevented this accident.

See Substituted Third Complaint, paragraph 18.

OLI has moved to dismiss this claim, arguing that the allegations fail to meet the

minimum threshold for the burden of pleading fraud under Arkansas law.

Under Arkansas law, allegations of fraud must demonstrate:

> (1) the defendant made a false, material representation (ordinarily of fact); (2) the
> defendant had knowledge the representation was false or asserted a fact which he
> did not know to be true; (3) the defendant intended the plaintiff should act on the

4

representation; (4) the plaintiff justifiably relied on the representation; and (5) plaintiff was damaged as a result of such reliance.

Wilson v. Allen, 305 Ark. 582, 583-84, 810 S.W.2d 42, 43 (1991).

The fraud alleged by Plaintiffs was directed to "the public, railroad employees, and government employees." See Substituted Third Complaint, paragraph 18. Plaintiffs have not alleged the fraud was directed specifically to the Plaintiffs. Plaintiffs have also failed to allege causation. The only reliance pled in the Complaint is that of the government and railroad in not installing lights and gates.

"[A] plaintiff may not recover for fraud and misrepresentations directed to a third party."

Arkansas Carpenters' Health & Welfare Fund v. Philip Morris, Inc., 75 F. Supp. 2d 936, 943 (E.D. Ark. 1999).

Accordingly, OLI's motion to dismiss this claim is GRANTED.

### C.    NonProfit Status

OLI moves to dismiss Plaintiffs' allegations with regard to the propriety of its non-profit corporation status. In their response, Plaintiffs stated they have not attempted to plead a separate cause of action related to OLI's status.

I do not exactly understand what Plaintiffs claim in this respect, but since Plaintiffs state that they are not pleading a cause of action pertaining to OLI's status, OLI's motion to dismiss this claim is GRANTED.

### Conclusion:

Plaintiffs' Motion to Amend Complaint (Doc. No. 61) and Motion to Substitute Proposed Third Complaint (Doc. No. 73) are GRANTED.

Defendant Operation Lifesaver, Inc.'s Motion to Dismiss (Doc. No. 47) is GRANTED.

Its Motion to Enlarge Time Within Which to Respond to Discovery (Doc. No. 78) is DENIED as

moot.

IT IS SO ORDERED this 6th day of November, 2000.

_____

UNITED STATES DISTRICT JUDGE

THIS DOCUMENT ENTERED ON
DOCKET SHEET IN COMPLIANCE
WITH RULE 58 AND/OR 79(a) FRCP
iN 11/6/0    BY

6



**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

## IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF ARKANSAS
### HELENA DIVISION

NOV 0 8 2000

JAMES W. McCORMACK CLERK
By:_____
DEP CLER

FRANK STEVENSON and REBECCA
HARSHBERGER, Administratrix of the
Estate of MARY E. STEVENSON, Deceased.                          **PLAINTIFFS**

V.                              NO. 2:99-CV-00160 WRW

UNION PACIFIC RAILROAD COMPANY,
and OPERATION LIFESAVER, INC.                                   **DEFENDANTS**

### ORDER

Pending are Defendant Union Pacific Railroad Company's Motion to Dismiss (Doc. No.

41), Plaintiffs' response (Doc. No. 71), and Defendant's reply (Doc. No. 75). I have examined

the parties' arguments in light of Plaintiffs' Substituted Third Amended Complaint, which I

granted Plaintiffs permission to file on November 6, 2000. For the reasons set forth below,

Defendant's Motion to Dismiss is GRANTED in part and DENIED in part.

**A.    Fraud**

Plaintiffs' allegations of fraud against Union Pacific are dismissed for the same reasons

they were dismissed against Operation Lifesaver, Inc. in my November 6, 2000 Order.

**B.    The Horn**

On August 29, 2000, I entered an Order granting Defendant's Motion for Partial

Summary Judgment which addressed the issue of the horn on Defendant's train. That Order

stated:

> First, Defendant argues that Plaintiffs' claim that Union Pacific failed to
> provide an effective warning system on the train is preempted by the Locomotive
> Inspection Act, 49 U.S.C. § 20701, et. seq. The "warning system" at issue is the
> train's horn.



DEFENDANT'S
EXHIBIT
2



Plaintiffs stipulate that they will not claim the device was inadequate, i.e, they will not claim that it could not have been blown in the proper manner. See Brief in Support of Response to Motion for Summary Judgment (Doc. No. 27), p. 11. So, Defendant's Motion for Summary Judgment on this point is GRANTED.

See Docket No. 43.

Defendant objects to various allegations remaining in Plaintiffs' Complaint. Many of these may be resolved by referring to the August 29, 2000 Order. I will address Defendant's argument in the order that Defendant raised them.[1] Plaintiffs allege:

(1)   The train horn was not properly blown to warn of the train's approach to the railroad crossing. The sound from the horn if blown at all was not audible to Plaintiff.

Plaintiffs may argue that the horn was not blown properly, and they may argue that the sound from the horn, which was blown improperly, was not audible to Plaintiffs.

(2)   The minimum sound output on the horn is mandated by federal law, but Defendant railroad has uniformly failed to insure that such a sound output on its horns comply with this minimum standard. In keeping with this practice Defendant railroad did nothing to insure compliance with the standard prior to this accident.

Plaintiffs stipulated that the horn in question could have produced the minimum sound output required by federal law. Whether horns on other of Defendant's trains complied with this minimum sound output standard is irrelevant to this lawsuit, and has no causal connection to Plaintiffs' accident. Likewise, whether Defendant did anything to insure compliance with the standard prior to this accident has no relevance to this lawsuit. The horn was in compliance with the regulation requiring minimum sound output.

---

[1]   The numbers of the paragraphs correlate to the numbers of the paragraphs in Defendant's Motion to Dismiss and in Plaintiffs' Substituted Third Amended Complaint.

2

Plaintiffs may allege that Defendant failed to comply with other federal regulation requirements – such as where the horn should have been blown, how long it should have been blown, whether an emergency horn sequence should have been used, etc.

    (3)    Defendants have actual or constructive knowledge that horn violations are common and widespread.  Defendant railroad has chosen not to monitor, investigate or punish whistle violations, including insufficient horn activation (soft whistle), improper activation and failure to active the horn, and Defendant railroad has failed to accurately document these violations.  Instead, Defendants have elected to condone the pattern and practice of whistle violations by fraudulently reporting compliance to the Federal Railroad Administration, law enforcement and the public.

Plaintiffs may allege that Defendant has a pattern and practice of whistle violations; as long as those violations do not relate to the minimum sound output capacity of the horn. Decisions with regard to the admissibility of routine practice evidence are reserved for trial.

Plaintiffs' allegation that Defendants have fraudulently reported compliance to the Federal Railroad Administration are dismissed for the same reasons set forth in my November 6, 2000 Order granting Defendant Operation Lifesaver, Inc.'s Motion to Dismiss.

    (4)    Defendants have known the inherent problems with train mounted audible warning systems for over 25 years and done nothing to resolve those problems or otherwise compensate for the safety deficiencies caused by those problems. Instead, Defendants have intentionally elected to engage in an information campaign designed to obscure the truth.  Through the use of this campaign defendant railroad has failed to properly instruct its employees about train mounted audible warning systems and the inherent safety deficiencies associated with various applications of those devices.

These are allegations of fraud, which are dismissed for the same reasons set forth in my November 6, 2000 Order.

3

**C.**    **Maintenance**

(1)    Defendant railroad failed to maintain its track, railroad crossing and right of way in a safe and reasonable condition in violation of Arkansas and Federal law. Non-compliant track conditions were ignored and misreported.

Plaintiffs' allegation that non-compliant track conditions were ignored and misreported is another allegation of fraud, and is dismissed. As stated in my August 29, 2000 Order, any allegation that the train was traveling too fast for the track conditions is preempted by federal law.

However, Plaintiffs may allege that the railroad did not maintain the track, crossing, and right of way as required by Arkansas and Federal law. Therefore, Plaintiffs may proceed on a claim that the railroad failed to maintain the crossing free of vegetation that would obstruct a driver's view in accordance with Ark. Code Ann. § 23-12-201.

(2)    The railroad crossing was not adequately and properly marked pursuant to the MUTCD, but the non-complaint conditions were ignored and misreported.

Plaintiffs admit in their response to Defendant's motion to dismiss that this allegation is related to their fraud claim. As stated above, Plaintiffs's fraud claim is dismissed. Therefore, this allegation is dismissed.

(4)[2]    The railroad right-of-way was not adequately clear of brush, trees, debris and other visual obstructions. In addition, the sight triangles necessary for a safe approach were not adequately clear of brush, trees, debris and other visual obstructions. These obstructions to visibility have been ignored by the railroad and intentionally misreported to the Federal Railroad Administration.

Plaintiffs may allege that there were visual obstructions on the right-of-way. Defendant argues the "sight triangles" referred to are not "law," and that it should only have to comply with

---

[2]    The numbering of this paragraph corresponds to the numbering of the paragraphs in Defendant's Motion to Dismiss and in Plaintiffs' Substituted Third Amended Complaint.

4

the vegetation maintenance requirements found in Ark. Code Ann. § 23-12-201. However,

Defendant has not provided any case law or authority for this proposition. Ark. Code Ann. § 23-12-201 statutorily sets minimum requirements, but simply meeting the minimum requirements

may not be "reasonable." If Defendant has additional authority to the contrary, it may provide

those in a motion for partial summary judgment.

> Plaintiffs' allegation that obstructions have been intentionally misreported is dismissed.

> (5)    Defendant railroad entrusted the maintenance of the railroad crossing to individuals when it knew, or should have known, said individuals were not properly instructed on issues of safety for the motoring public. The crossing in question is within a corridor where the pattern and practice of the railroad has been to totally ignore public safety. Defendants' education program promotes the practice of ignoring the railroad's public safety duties.

Defendant argues this allegation fails to state <u>facts</u> upon which relief can be granted.

Under the Federal Rules of Civil Procedure, however, fact pleading is not required. Defendant

may submit interrogatories to Plaintiffs asking Plaintiffs to list the specific safety duties which

they contend the railroad has ignored.

Defendant also argues that this allegation sounds like one of negligent entrustment.

Defendant argues that where an employer concedes *respondeat superior* for any negligent acts of

the employee, the plaintiff cannot pursue a separate claim for negligent entrustment. <u>See</u> <u>Elrod v.

G & R Const. Co.</u>, 275 Ark. 151, 628 S.W.2d 17 (1982). Because Plaintiffs did not respond to

this argument, I assume that Plaintiffs agree. Accordingly, to the extent that Plaintiffs seek to

allege a claim of negligent entrustment, that claim is dismissed.

> (6)    Required inspections of track and crossings were not performed, misreported and repeatedly failed to identify obvious non-compliant conditions.

5

In their response to the motion to dismiss, Plaintiffs state this paragraph is part of its claim that the railroad avoided maintenance costs by not reporting deficiencies, and that this resulted in this crossing not getting reviewed for upgrading to lights and gates. If such a review would have occurred, Plaintiffs allege that there would have been lights and gates at the time of the accident and the accident would not have occurred. Like the fraud claims discussed above, causation on this claim is too tenuous. See November 6, 2000, Order Granting Defendant Operation Lifesaver, Inc.'s Motion to Dismiss. Accordingly, this allegation is dismissed.

**D.    Improper Instruction and Management**

(1)    Defendant railroad entrusted the train in question to the train crew when it knew, or should have known, that said train crew was not properly instructed on the issues of safety for the motoring public. Defendant has failed to instruct crews and other employees on proper reporting of hazards to the motoring public and appropriate operating practices for these hazards. Defendant railroad's practices discourage the reporting of crossing safety hazards.

Defendant argues the allegation that the train crew was not properly instructed should be dismissed because it is preempted pursuant to 49 U.S.C. § 20106 and 49 C.F.R. § 240 et. seq. See also Burlington Northern Ry. Co. v. Doyle. 186 F.3d 790 (7th Cir. 1999). Plaintiffs' only response to this argument is that this allegation "goes to the claims of fraud, negligent misrepresentation, and violation of federal acts and regulations."

Plaintiffs' claims of fraud and negligent misrepresentation are dismissed for the same reasons set forth in my November 6, 2000 Order. To the extent Plaintiffs claim that Defendant has failed to follow any federal acts and regulations that govern this subject matter, Plaintiffs may proceed with their claim.

(2)    Defendant railroad has negligent failed to identify specific local hazards and failed to instruct its train crews and other employees how to identify specific local hazards.

See discussion under D(1), *supra*.

(3)    Defendants have intentionally instructed train crews and other employees that there is nothing the railroad can do to prevent accidents or reduce risks to the motoring public at railroad crossings despite the knowledge that such an assertion is false. Defendants' education program promotes the practice of ignoring the railroads' public safety duties.

See discussion under D(1), *supra*.

(4)    Defendant railroad has failed to work jointly with local road authorities and adjoining landowners to provide adequate and safe crossings for the motoring public.

Defendant argues this is a "fuzzy" allegation which means nothing. Plaintiffs' only response is that this allegation "goes to the claims of fraud, negligent misrepresentation, and violation of federal acts and regulations."

As already noted, Plaintiffs' claims of fraud and negligent misrepresentation are dismissed. To the extent this allegation relates to Plaintiffs' allegations that Defendant failed to maintain the crossing free of vegetation, it may stand.

(5)    Defendant railroad has failed to perform any proficiency tests concerning public safety at crossings.

Again, Defendant argues this is a "fuzzy" allegation which means nothing, and Plaintiffs only response is that this allegation "goes to the claims of fraud, negligent misrepresentation, and violation of federal acts and regulations." This allegation is, therefore, dismissed.

(6)    Defendant railroad knew, or should have known, that the custom and practice of failing to supervise and monitor the safety practices of its train crews, maintenance of way crews and supervisors of those crews, and further failing to

implement policies and procedures which would better insure the safety of the motoring public, would result in needless catastrophic injury and loss of life.

Plaintiffs state this allegation "goes to the claims of fraud, negligent misrepresentation, and violation of federal acts and regulations." It is dismissed.

### E.    Speed and Braking

Defendant objects that these allegations were already addressed in the August 29, 2000 Order Granting Defendant's Motion for Partial Summary Judgment. Plaintiffs acknowledge the summary judgment ruling and respond saying that they "wish to preserve that issue and reserve the right to have the Court review the ruling if sufficient new evidence would merit such a review." See Response to Defendant's Motion to Dismiss, Doc. No. 71.

The decisions in the August 29, 2000 Order will not be revisited.

### F.    Ultra-Hazardous Crossing

Defendant argues that Plaintiffs' claims for abnormally dangerous crossing and negligent failure to have flashing lights and gates at the crossing were dismissed in the August 29, 2000, Order. Plaintiffs agree, but contend that "the Court was going to allow plaintiffs to develop their claims of fraud and assumption of duty [324a]."

Actually, Plaintiffs' claims of fraud and assumption of duty had not been fully pled and briefed at that time, and I withheld ruling on them in the August 29, 2000, Order. As discussed in my November 6, 2000, Order, however, these claims cannot stand. Accordingly, Plaintiffs' allegations with regard to the "ultra-hazardous crossing" are dismissed.

8

### G.    Violation of Federal Regulations and Railroad Rules

Paragraph 4 of Plaintiffs' Substituted Third Amended Complaint sets out several sections of the Code of Federal Regulations that govern railroad operations. Paragraph 5 states that pursuant to the regulations listed in paragraph 4, Defendant has adopted rules governing its own practices and operations. Paragraph 6 alleges that Defendant has violated its own rules and federal regulations and that these are evidence of negligent, willful and wanton conduct.

Defendant objects to these three paragraphs, arguing that they contain no allegations regarding how these regulations apply to this case, how the Defendant breached these duties, or how such a breach was a proximate cause of the accident.

To the extent these allegations relate to Plaintiffs' claims of fraud and negligent misrepresentation, they are dismissed. To the extent Plaintiffs seek, by these paragraphs, to set forth a separate cause of action, they are dismissed for failure to allege causation. To the extent these regulations provide further "evidence" of negligence alleged elsewhere in the Complaint, they are permitted to stand.

### H.    Operation Lifesaver

Operation Lifesaver, Inc. has been dismissed from this action. See Order dated November 6, 2000. All allegations of fraud and negligent misrepresentation against Defendant Union Pacific are dismissed for the same reasons set forth in the November 6, 2000, Order.

### I.    Spoliation of Evidence

Plaintiffs acknowledge that the allegations contained in this section do not constitute an independent tort. They argue the allegations may, however, subject the Defendant to sanctions.

If Plaintiffs develop a basis for a motion for sanctions, they may file one. In the meantime, the allegations do not constitute a cause of action and are to be stricken from the Complaint.

IT IS SO ORDERED this ___8th___ day of November, 2000.

_____
UNITED STATES DISTRICT JUDGE

THIS DOCUMENT ENTERED ON DOCKET SHEET IN
COMPLIANCE WITH RULE 58 AND/OR 79(a) FRCP
ON _____11-9-00____ BY ___

10

F I L E   C O P Y

vjt

UNITED STATES DISTRICT COURT
Eastern District of Arkansas
U.S. Post Office & Court House
600 West Capitol, Suite 402
Little Rock, Arkansas 72201-3325


November 9, 2000



\* \* MAILING CERTIFICATE OF CLERK \* \*


Re:  2:99-cv-00160.



True and correct copies of the attached were mailed by the clerk to the
following:


    William H. Sutton, Esq.
    Friday, Eldredge & Clark
    Regions Center
    400 West Capitol Avenue
    Suite 2000
    Little Rock, AR  72201-3493

    Scott H. Tucker, Esq.
    Friday, Eldredge & Clark
    Regions Center
    400 West Capitol Avenue
    Suite 2000
    Little Rock, AR  72201-3493

    Joseph Patrick McKay, Esq.
    Friday, Eldredge & Clark
    Regions Center
    400 West Capitol Avenue
    Suite 2000
    Little Rock, AR  72201-3493

    B. Michael Easley, Esq.
    Easley, Hicky, Cline & Hudson
    510 East Cross Street
    Post Office Box 1115
    Forrest City, AR  72336-1115

    Robert L. Pottroff, Esq.
    Myers, Pottroff and Ball
    320 Sunset Avenue
    Manhattan, KS  66502-3757

    Stephen W. Boyda, Esq.
    Attorney at Law
    Post Office Box 207

Marysville, KS  66508

cc: press

James W. McCormack, Clerk

V. Turner

Date:  11/9/00 _____     BY: _____

Case 2:03-cv-00056-SWW     Document 1     Filed 04/24/03     Page 62 of 97

## Figure 8B-2. *Typical Placement of Warning Signs and Pavement Markings at Highway-Rail Grade Crossings*



A three-lane roadway should be marked with a centerline for two-lane approach operation on the approach to a crossing.

On multi-lane roads, the transverse bands should extend across all approach lanes, and individual RXR symbols should be used in each approach lane.

Stop line approximately 2.4 m (8 ft) from gate (if present)

1.8 m (6 ft)

Train Dynamic Envelope

Dynamic Envelope Pavement Marking (optional)

1.8 m (6 ft)

approx. 4.6 m (15 ft)

See Chapter 2C, Table 2C-4

7.5 m (25 ft)

15 m (50 ft)

7.5 m (25 ft)

Pavement Marking Symbol* (see Figure 8B-3)

* When used, a portion of the pavement marking symbol should be directly opposite the Advance Warning Sign (W10-1). If needed, supplemental pavement marking symbol(s) may be placed between the Advance Warning Sign and the crossing, but should be at least 15 meters (50 ft) from the stop line.

Note: In an effort to simplify the figure to show warning sign and pavement placement, not all required traffic control devices are shown.

NO PASSING ZONE

(Optional)

Legend
→ Direction of travel

June 2001

Sect. 8B.16

DEFENDANT'S EXHIBIT 3

PBKGl0-Bayonne, N.J.

## IN THE CIRCUIT COURT OF CROSS COUNTY, ARKANSAS
## CIVIL DIVISION

THE CROSS COUNTY BANK, GUARDIAN
OF THE ESTATE OF COURTNEY ESKEW,
and HELEN KENNON, GUARDIAN OF
THE PERSON OF COURTNEY ESKEW

FILED

APR 22 '03

VERNON L. HORTON
CLERK AND EX-OFFICIO RECORDER
CROSS COUNTY, ARKANSAS
BY _Rhonda Sullivan_ D.C.

**PLAINTIFFS**

VS.                                    NO. CV-2003-57

UNION PACIFIC RAILROAD COMPANY,
BRUCE BROWN and CHARLES FELKINS                    **DEFENDANTS**

### AFFIDAVIT OF SERVICE

STATE OF ARKANSAS
COUNTY OF ST. FRANCIS

On this day personally appeared before the undersigned notary public, duly qualified, commissioned, and acting within and for the county and state aforesaid, and by law authorized to administer oaths, B. Michael Easley, to me well known, and after being duly sworn, deposes and says:

I am the attorney for the Plaintiffs in this cause of action. On April 2, 2003, I did mail to Defendant Bruce Brown at his address at 297 Windwood Heights, Cabot, AR 72023 a copy of the Complaint at Law in this cause of action. Such mailing was by United States certified mail, return receipt requested, restricted delivery, with postage thereon prepaid.

The receipt or "green card" for such mailing, showing delivery thereof on April 7, 2003 was returned to me, signed by Bruce Brown.

Such green card or receipt is attached hereto, marked Exhibit "A" and incorporated herein by reference.

_B. Michael Easley_
B. MICHAEL EASLEY

SUBSCRIBED and sworn to before me this 17th day of April, 2003.

My commission expires:
8/10/09

_Debbie Brickey_
NOTARY PUBLIC

[Notary seal: DEBBIE BRICKEY ... IS CO. AR]

| SENDER: COMPLETE THIS SECTION | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X ☐ Agent ☐ Addressee<br>B. Received by ( Printed Name)    C. Date of Delivery 4-7-03<br>D. Is delivery address different from item 1? ☐ Yes<br>    If YES, enter delivery address below: ☐ No |
| 1. Article Addressed to:<br><br>Mr. Bruce Brown<br>297 Windwood Heights<br>Cabot, AR 72023 | |
| | 3. Service Type<br>☒ Certified Mail   ☐ Express Mail<br>☐ Registered   ☒ Return Receipt for Merchandise<br>☐ Insured Mail   ☐ C.O.D.<br>4. Restricted Delivery? (Extra Fee)   ☒ Yes |
| 2. Article Number   7000 0600 0022 7006 1388<br>(Transfer from service label) | |

| PS Form 3811, August 2001 | Domestic Return Receipt | 102595-02-M-1095 |

Exhibit "A"

## IN THE CIRCUIT COURT OF CROSS COUNTY, ARKANSAS
## CIVIL DIVISION

THE CROSS COUNTY BANK, GUARDIAN
OF THE ESTATE OF COURTNEY ESKEW,
and HELEN KENNON, GUARDIAN OF
THE PERSON OF COURTNEY ESKEW

**FILED**

**APR 22 '03**

VERNON L. HORTON
CLERK AND EX-OFFICIO RECORDER
CROSS COUNTY, ARKANSAS

BY ~~Rhonda Sullivan~~ D.C. **PLAINTIFFS**

VS.                              NO. CV-2003-57

UNION PACIFIC RAILROAD COMPANY,
BRUCE BROWN and CHARLES FELKINS                **DEFENDANTS**

### AFFIDAVIT OF SERVICE

STATE OF ARKANSAS
COUNTY OF ST. FRANCIS

On this day personally appeared before the undersigned notary public, duly qualified, commissioned, and acting within and for the county and state aforesaid, and by law authorized to administer oaths, B. Michael Easley, to me well known, and after being duly sworn, deposes and says:

I am the attorney for the Plaintiffs in this cause of action. On April 2, 2003, I did mail to Defendant Union Pacific Railroad Company, by serving its agent for service, William H. Sutton, at his address at 400 West Capitol, Little Rock, AR 72201 a copy of the Complaint at Law in this cause of action. Such mailing was by United States certified mail, return receipt requested, restricted delivery, with postage thereon prepaid.

The receipt or "green card" for such mailing, showing delivery thereof on April 8, 2003 was returned to me, signed by Jacob S. Brown.

Such green card or receipt is attached hereto, marked Exhibit "A" and incorporated herein by reference.

B. MICHAEL EASLEY

SUBSCRIBED and sworn to before me this 17th day of April, 2003.

My commission expires:
4/3/10/09

NOTARY PUBLIC

*(Notary seal: DEBBIE BRICKEY)*

| SENDER: COMPLETE THIS SECTION | COMPLETE THIS SECTION ON DELIVERY |
|---|---|

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Mr. William H. Sutton
400 West Capitol
Suite 2000
Little Rock, AR   72201

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____    ☐ Agent   ☐ Addressee

B. Received by ( Printed Name)    C. Date of Delivery
Jacob S. Br____

D. Is delivery address different from item 1?   ☐ Yes
If YES, enter delivery address below:   ☐ No

3. Service Type
☒ Certified Mail    ☐ Express Mail
☐ Registered    ☐ Return Receipt for Merchandise
☐ Insured Mail    ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☒ Yes

2. Article Number
(Transfer from service label)    7000 0600 0022 7006 1371

PS Form 3811, August 2001    Domestic Return Receipt    102595-02-M-1035

*Exhibit "A"*

# IN THE CIRCUIT COURT OF CROSS COUNTY, ARKANSAS
## CIVIL DIVISION

---

### SUMMONS

---

**THE CROSS COUNTY BANK, GUARDIAN
OF THE ESTATE OF COURTNEY ESKEW,
and HELEN KENNON, GUARDIAN OF
THE PERSON OF COURTNEY ESKEW**        **PLAINTIFFS**

VS.             NO. CV-2003- **57**

**UNION PACIFIC RAILROAD COMPANY,
BRUCE BROWN and CHARLES FELKINS**        **DEFENDANTS**

---

Plaintiff's Attorney:     B. Michael Easley
                    Post Office Box 1115
                    Forrest City, AR 72336-1115

THE STATE OF ARKANSAS TO DEFENDANT: Union Pacific Railroad Company by
serving William H. Sutton, agent for service, 400 West Capitol, Little Rock, AR 72201

### NOTICE

     1.     You are hereby notified that a lawsuit has been filed against you; the relief asked is stated in the attached complaint.

     2.     The attached complaint will be considered admitted by you and a judgment by default may be entered against you for the relief asked in the complaint unless you file a pleading and thereafter appear and present your defense. Your pleading or answer must meet the following requirements:

            A.     It must be in writing, and otherwise comply with the Arkansas Rules of Civil Procedure.

            B.     It must be filed in the court clerk's office within 20 days from the day you were served with this Summons.

     3.     If you desire to be represented by an attorney you should immediately contact your attorney so that an answer can be filed for you within the time allowed.

     4.     Additional notices: None.

2

WITNESS my hand and the seal of the court this ___2___ day of April, 2003.

VERNON HORTON, CIRCUIT CLERK

BY: Rhonda Sullivan, D.C.

**RETURN**

THE STATE OF ARKANSAS

COUNTY OF ST. FRANCIS

Now on this _____ day of April, 2003, comes on before me, a notary public within and for the county and state aforesaid, duly qualified, commissioned, and acting, B. Michael Easley, to me well known, who, upon being first duly sworn, doth state that he did mail to Union Pacific Railroad Company, by serving William H. Sutton, agent for service, at his last known address, hereinabove set forth, notice of the above and foregoing action, by certified mail, return receipt requested, and postage paid, pursuant to ARCP Rule 4(c)(3).

IN TESTIMONY WHEREOF, I have hereunto set my hand and seal this day and date first hereinabove mentioned and set forth.

B. MICHAEL EASLEY

SUBSCRIBED and sworn to before me this _____ day of April, 2003.

Debbie Brickey
NOTARY PUBLIC

MY COMMISSION EXPIRES: 8/19/09

# IN THE CIRCUIT COURT OF CROSS COUNTY, ARKANSAS
## CIVIL DIVISION

---

### SUMMONS

---

**THE CROSS COUNTY BANK, GUARDIAN
OF THE ESTATE OF COURTNEY ESKEW,
and HELEN KENNON, GUARDIAN OF
THE PERSON OF COURTNEY ESKEW**           **PLAINTIFFS**

VS.             **NO. CV-2003- 51**

**UNION PACIFIC RAILROAD COMPANY,
BRUCE BROWN and CHARLES FELKINS**           **DEFENDANTS**

---

Plaintiff's Attorney:      B. Michael Easley
                         Post Office Box 1115
                         Forrest City, AR 72336-1115

THE STATE OF ARKANSAS TO DEFENDANT: Charles Felkins, 19 Needs Creek
Heights, Greenbrier, AR 72058

### NOTICE

    1.    You are hereby notified that a lawsuit has been filed against you; the relief asked is stated in the attached complaint.

    2.    The attached complaint will be considered admitted by you and a judgment by default may be entered against you for the relief asked in the complaint unless you file a pleading and thereafter appear and present your defense. Your pleading or answer must meet the following requirements:

        A.    It must be in writing, and otherwise comply with the Arkansas Rules of Civil Procedure.

        B.    It must be filed in the court clerk's office within 20 days from the day you were served with this Summons.

    3.    If you desire to be represented by an attorney you should immediately contact your attorney so that an answer can be filed for you within the time allowed.

    4.    Additional notices: None.

2

WITNESS my hand and the seal of the court this __2__ day of April, 2003.

VERNON HORTON, CIRCUIT CLERK

BY: _Rhonda Gulluse_, D.C.

## RETURN

THE STATE OF ARKANSAS

COUNTY OF ST. FRANCIS

Now on this _____ day of April, 2003, comes on before me, a notary public within and for the county and state aforesaid, duly qualified, commissioned, and acting, B. Michael Easley, to me well known, who, upon being first duly sworn, doth state that he did mail to Charles Felkins, at his last known address, hereinabove set forth, notice of the above and foregoing action, by certified mail, return receipt requested, and postage paid, pursuant to ARCP Rule 4(c)(3).

IN TESTIMONY WHEREOF, I have hereunto set my hand and seal this day and date first hereinabove mentioned and set forth.

B. MICHAEL EASLEY

SUBSCRIBED and sworn to before me this _____ day of April, 2003.

_Debbie Brickey_
NOTARY PUBLIC

MY COMMISSION EXPIRES:
8/10/09

04/07/2003 14:19   501-84:  :48      JENNIFER BROWN                    PAGE 02

# IN THE CIRCUIT COURT OF CROSS COUNTY, ARKANSAS
## CIVIL DIVISION

## SUMMONS

**THE CROSS COUNTY BANK, GUARDIAN
OF THE ESTATE OF COURTNEY ESKEW,
and HELEN KENNON, GUARDIAN OF
THE PERSON OF COURTNEY ESKEW**                         **PLAINTIFFS**

**VS.**                    **NO. CV-2003- 57**

**UNION PACIFIC RAILROAD COMPANY,
BRUCE BROWN and CHARLES FELKINS**                      **DEFENDANTS**

Plaintiff's Attorney:       B. Michael Easley
                            Post Office Box 1115
                            Forrest City, AR 72336-1115

THE STATE OF ARKANSAS TO DEFENDANT:  Bruce Brown, 297 Windwood
Heights Lane, Cabot, AR  72023

### NOTICE

    1.    You are hereby notified that a lawsuit has been filed against you; the relief asked is stated in the attached complaint.   .

    2.    The attached complaint will be considered admitted by you and a judgment by default may be entered against you for the relief asked in the complaint unless you file a pleading and thereafter appear and present your defense. Your pleading or answer must meet the following requirements:

        A.    It must be in writing, and otherwise comply with the Arkansas Rules of Civil Procedure.

        B.    It must be filed in the court clerk's office within 20 days from the day you were served with this Summons.

    3.    If you desire to be represented by an attorney you should immediately contact your attorney so that an answer can be filed for you within the time allowed.

    4.    Additional notices:  None.

2

WITNESS my hand and the seal of the court this ___2___ day of April, 2003.

VERNON HORTON, CIRCUIT CLERK

BY: _Rhonda Sullian_ D.C.

## RETURN

THE STATE OF ARKANSAS

COUNTY OF ST. FRANCIS

Now on this _____ day of April, 2003, comes on before me, a notary public within and for the county and state aforesaid, duly qualified, commissioned, and acting, B. Michael Easley, to me well known, who, upon being first duly sworn, doth state that he did mail to Bruce Brown, at his last known address, hereinabove set forth, notice of the above and foregoing action, by certified mail, return receipt requested, and postage paid, pursuant to ARCP Rule 4(c)(3).

IN TESTIMONY WHEREOF, I have hereunto set my hand and seal this day and date first hereinabove mentioned and set forth.

_____
B. MICHAEL EASLEY

SUBSCRIBED and sworn to before me this _____ day of April, 2007.

_Debbie Brickey_
NOTARY PUBLIC

MY COMMISSION EXPIRES:
8/10/09

CERTIFIED MAIL

7000 0600 0022 7006 1388

4/7/03

**EASLEY, HICKY & HUDSON**
Post Office Box 1115
510 East Cross Street
Forrest City, Arkansas 72336-1115

**TO:** Mr. Bruce Brown
297 Windwood Heights Lane
Cabot, AR 72023



**FIRST CLASS MAIL**



159
1831■08■840 APR 0
3666    FORREST CITY AR    7

## IN THE CIRCUIT COURT OF CROSS COUNTY, ARKANSAS
## CIVIL DIVISION

THE CROSS COUNTY BANK, GUARDIAN
OF THE ESTATE OF COURTNEY ESKEW,
and HELEN KENNON, GUARDIAN OF
THE PERSON OF COURTNEY ESKEW

**FILED**

APR 0 2 2003

VERNON L. HORTON
CLERK AND EX-OFFICIO RECORDER
CROSS COUNTY, ARKANSAS

BY _____ D.C.

**PLAINTIFFS**

VS.                      NO.  CV-2003- 51

UNION PACIFIC RAILROAD COMPANY,
BRUCE BROWN and CHARLES FELKINS

**DEFENDANTS**

## COMPLAINT AT LAW

Comes the Plaintiff Cross County Bank, Guardian of the Estate of Courtney

Eskew, and Helen Kennon, Guardian of the Person of Courtney Eskew, by their

attorneys Easley, Hicky & Hudson, for their Complaint against the Defendants,

states:

### I. Jurisdictional Statement

1.    The Cross County Bank, Guardian of the estate of Courtney Eskew, is

a banking corporation having its principal place of business in Wynne, Cross

County, Arkansas.  Courtney Eskew and her mother, Helen Kennon, as Guardian

of her Person, are and were at all times pertinent hereto a resident of Cross County,

1

Arkansas.  The Defendant Union Pacific Railroad Company, hereinafter referred to as "UPRR," is and was at all times pertinent to this action a foreign corporation organized under the laws of the State of Delaware and qualified to do business in the State of Arkansas.  The Defendant Bruce Brown was at all times relevant to this matter a UPRR employee and resident of Lonoke County, Arkansas.  The Defendant Charles Felkins is a UPRR employee and Arkansas resident.

The train-car collision complained of herein occurred at the Wilson Street crossing of the Union Pacific line in Wynne, Cross County, Arkansas.  This Court has full jurisdiction of the parties and subject matter hereto, under the provisions of ACA Section 16-13-201(a), and venue properly lies in this county under the provisions of ACA Section 16-60-112.

## FACTS AND ALLEGATIONS

2.    On or about May 22, 2001, shortly after 12 noon, Plaintiff Courtney Eskew was operating her vehicle lawfully and cautiously in a northerly direction on Wilson Street in Wynne, Arkansas.  When she attempted to cross the Union Pacific railroad tracks that traverse Wilson Street, her vehicle was smashed and obliterated by a westbound UPRR freight train that had approached the crossing without giving adequate or legal warning.

3.  The train that struck Courtney Eskew was owned, operated and

2

controlled by Defendant UPRR, by and through its employees, agents and/or servants.

4.  All negligence on the part of Defendant UPRR's employees, servants, and/or agents should be imputed to Defendant UPRR under the doctrine of *respondeat superior* because these individuals were at all pertinent times hereto acting as employees of Defendant UPRR, and within the scope of their employment.

## I.  <u>Claims against Defendant Union Pacific Railroad</u>

The collision and resulting damages to Plaintiff were directly and proximately caused by the negligence and intentional conduct of Defendant Union Pacific (hereinafter called "UPRR") and/or its agents, servants and employees while they were acting within the scope of their employment, as follows:

## A.    <u>As to the Crossing and Right of Way</u>:

From the number of past collisions at the Wilson Street crossing, as well as from other sources, Defendant UPRR knew the Wilson Street crossing to be an abnormally dangerous one.

(1)    Defendant UPRR has a duty to provide reasonable, timely, and visible warning of trains approaching its crossing.

a. Defendant UPRR breached this duty in that the Wilson Street crossing had an inadequate approach sight distance to provide an approaching driver with adequate sight distance down the roadway to determine the location of the crossing, its condition,

3

the type of warning devices, the number of tracks, and whether a train was on any of those tracks. This condition of inadequate approach sight distances should have been reported by Defendant UPRR and addressed by a cooperative effort between Defendant UPRR and the local road authority. However, Defendant UPRR failed to take any steps to provide motorists with an adequate approach sight distance or to warn of dangerous conditions.

b. Defendant UPRR breached this duty in that the Wilson Street crossing had inadequate sight distances (a/k/a "sight triangles") to provide a driver approaching the crossing within the speed limit reasonable time within which to observe a train simultaneously approaching the crossing so that the driver could react and stop short of the crossing. This condition of inadequate sight triangles should have been reported by the railroad and addressed by a cooperative effort between Defendant UPRR and the local road authority. However, Defendant UPRR failed to take any reasonable steps to provide motorists with adequate sight triangles or to warn of their inadequacy.

c. Defendant UPRR breached this duty by failing to clear visibility obstructions from its right of way, so as to provide motorists with an adequate view of the track in both directions.

d. Defendant UPRR further breached this duty in that it has known that the areas surrounding this crossing and other similarly situated crossings were not adequately clear of brush, trees, debris and other visual obstructions, distractions and visual clutter. These obstructions to good visibility create safety hazards for motorists using the crossing. Defendant UPRR has failed to properly train its employees to recognize safety hazards caused by visibility obstructions, and because of this inadequate training, the obvious safety hazards at this crossing went unreported prior to this accident, or, such reports were not properly acted upon.

e.  Defendant UPRR breached this duty in that it has actual or constructive knowledge that safety hazards caused by visibility obstructions are common and widespread, but has chosen to ignore these safety hazards.  Instead of correcting the safety hazards, Defendant UPRR has intentionally misrepresented the extent of the problem by publishing and then acting upon false and misleading information concerning the existence of safety hazards caused by visibility obstructions.  As a result, its employees are aware that Defendant UPRR does not want them to report safety hazards caused by visibility obstructions.  It is the routine practice of Defendant UPRR to condone its employee's failure to report safety hazards caused by visibility obstructions at grade crossings.

f.  Defendant UPRR's breach of this duty is the proximate and legal cause of this accident and was a factor that contributed to the dangerous condition of the Wilson Street crossing.

(2)  Defendant UPRR has a duty to properly construct and maintain its crossings to allow for reasonably safe passage across its tracks for the motoring public, including Courtney Eskew.

a.  Defendant UPRR has a duty to comply with federal regulations that prescribe the minimum safety requirements for railroad tracks that are part of the general railroad system of transportation.  The requirements prescribed by these regulations apply to specific track conditions existing in isolation.

b.  Defendant UPRR has a duty to comply with federal regulations that require each owner of track to keep a record of each inspection performed on that track.  Each record of inspection must be prepared the day the inspection is made and signed by the person making the inspection.

c.  Defendant UPRR has a duty to comply with federal regulations that set forth the frequency with which the track inspections shall be conducted.  Pursuant to federal regulations, track inspections over this section of track should have been

5

conducted twice weekly, with at least one calendar day interval between inspections.

d. Defendant UPRR has a duty to comply with federal regulations requiring that each inspection of track must be made on foot or by riding over the track in a vehicle at a speed that allows the person making the inspection to visually inspect the track.

e. Plaintiffs believe, and therefore allege, that Defendant UPRR has breached the foregoing duties by failing to properly inspect the track prior to these incidents, and failing to make the proper documentation as required by federal regulations.

f. Defendant UPRR's breach of this duty is the proximate and legal cause of this accident, or is a factor that contributed to the dangerous condition of the Wilson Street crossing.

(3) Defendant UPRR has a duty to not raise the level of its track from the plane of the adjoining roadway so as to create an elevated or "humped" crossing.

a. Defendant UPRR breached that duty when it raised the level of the track at the Wilson Street crossing above that of the adjoining roadway.

b. Defendant UPRR's breach of this duty is the proximate and legal cause of this accident, or is a factor that contributed to the dangerous condition of the Wilson Street crossing.

(4) Defendant UPRR had a duty to mark the crossing so as to provide a reasonable motorist, such as Courtney Eskew, with sufficient information to cross both sets of tracks with reasonable safety.

a. Defendant UPRR breached this duty in that the cross-bucks at the Wilson Street crossing were deteriorated so badly that they were non-compliant with the Manual on Uniform Traffic Control Devices (MUTCD) as required by Arkansas and Federal Law.

b. Defendant UPRR breached this duty in that the cross-bucks at the Wilson Street crossing were improperly placed to advise a

6

---

motorist of the location of the tracks, and as such, were non-compliant with the Manual on Uniform Traffic Control Devices (MUTCD) as required by Arkansas and Federal Law.

c. Defendant UPRR breached this duty by failing to install active warning devices (such as lights and gates) at the Wilson Street crossing.

d. Defendant UPRR breached this duty by intentionally delaying the installation of lights and gates at the Wilson Street crossing, once they were approved.

e. Defendant UPRR breached its duty by failing to report to the local road authority the lack of advance warning signs and the non-compliance of advance warning signs with MUTCD standards, as required by Arkansas and Federal Law.

f. Defendant UPRR's breach of this duty is the proximate and legal cause of this accident, or was a factor that contributed to the dangerous condition of the Wilson Street crossing, and thus, this accident.

(5) Defendant UPRR has a duty to maintain the Wilson Street crossing in such a manner as to prevent it from becoming an ultra-hazardous crossing.

a. Defendant UPRR breached this duty by allowing substandard sight distances; crossing geometry and construction; inadequate signage, markings, and protective devices; and improper maintenance to be present at the Wilson Street crossing, which combined to render the crossing in question ultra-hazardous to motorists, including Courtney Eskew.

b. Defendant UPRR breached this duty in that it knew, or in the exercise of reasonable care should have known, of the ultra-hazardous nature of this crossing, but failed or deliberately chose not to take any action to reduce the danger to the motoring public, including Courtney Eskew.

7

· 64/07/2003   14:19    501-843    48         JENNIFER BROWN                    PAGE  10

   c.  Defendant UPRR knew, or in the exercise of reasonable care
should have known, of the ultra-hazardous and dangerous
nature of this crossing, but failed or deliberately chose to not
take any steps to cooperate with the local road authority or to
provide information to the local road authority necessary to
reduce the risk of injury or death to the motoring public,
including Courtney Eskew.

   d.  Defendant UPRR's breach of this duty is the proximate and
legal cause of this accident, or is a factor that contributed to the
dangerous condition of the Wilson Street crossing, and thus, to
this accident.

## B.    As to Reasonable and Timely Warning:

   (1)   Defendant UPRR has a duty to give reasonable and timely warning of
the approach of its train to the crossing.

      a.  Defendant UPRR breached this duty in that its crew failed to
give a sufficient warning, for a sufficient period of time upon
the approach of its train, to warn the Plaintiff of the approach of
the train.

      b.  Defendant UPRR's breach of this duty contributed to the legal
and proximate cause of Plaintiff's accident, or was a factor that
contributed to the overall unsafe operation of the train in
question, and the resulting accident.

   (2)   Defendant UPRR has a duty to comply with 49 C.F.R. § 229.129.

      a.  Defendant UPRR breached this duty in that the train horn on
the locomotive involved in this accident did not comply with
the audibility requirements stated in 49 C.F.R. § 229.129.
UPRR has no evidence that the train horn complied with this
regulation at the time of this accident.  In fact, the horn did not
provide an audible warning of the train's approach prior to this
accident.

    b. Defendant UPRR's breach of this duty contributed to the legal and proximate cause of Plaintiff's accident, or was a factor that contributed to the overall unsafe operation of the train in question, and the resulting accident.

(3)    Defendant UPRR had a duty to blow the correct crossing sequence, for the correct amount of time, to warn of the train's approach to the Wilson Street crossing.

    a. Defendant UPRR breached this duty in that the crew did not blow the proper crossing sequence, for the correct amount of time, to warn of the train's approach to the Wilson Street crossing.

    b. Defendant UPRR's breach of this duty contributed to the legal and proximate cause of Plaintiff's accident, or was a factor that contributed to the overall unsafe operation of the train in question, and the resulting accident.

(4)    UPRR's crew had a duty to blow the correct emergency horn sequence once it recognized that an emergency existed at the time of Plaintiff's accident.

    a. Defendant UPRR breached this duty in that its crew did not blow the proper emergency horn sequence once it determined that an emergency existed at the time of Plaintiff's accident.

    b. Defendant UPRR's breach of this duty contributed to the legal and proximate cause of Plaintiff's accident, or was a factor that contributed to the overall unsafe operation of the train in question, and the resulting accident.

(5)    Defendant UPRR has a duty to recognize the safety issues caused by the deficiencies in train mounted audible warning systems, and to advise and instruct its employees about those problems.

    a. Defendant UPRR breached this duty in that it has known of the inherent problems with train mounted audible warning systems for over 25 years and has done nothing to resolve those problems or otherwise compensate for the safety deficiencies

caused by these problems.  In addition, Defendant UPRR has
failed to recognize the deficiencies in train-mounted audible
warning systems, and to instruct its employees about the safety
issues caused by those problems.

b.  Defendant UPRR has breached this duty in that it has failed to
properly train its crews in the use of and need for proper horn
activation.

c.  Defendant UPRR's breach of this duty contributed to the legal
and proximate cause of Plaintiff's accident, or was a factor that
contributed to the overall unsafe operation of the train in
question, and the resulting accident.

(6)  Defendant UPRR has a duty to investigate or punish horn violations,
monitor for insufficient horn activation or otherwise attempt to
accurately document these violations.

a.  Defendant UPRR has breached this duty in that it has actual or
constructive knowledge that horn violations are common and
widespread, but has chosen not to investigate or punish horn
violations, monitor for insufficient horn activation or otherwise
attempt to accurately document these violations.  Instead,
defendant UPRR has intentionally misrepresented the extent of
the problem by publishing false and misleading information
concerning the nature and extent of horn violations.  As a result,
its employees are aware that the railroad condones horn
violations and it thus has become a routine practice of
Defendant UPRR to ignore such violations at grade crossings.

b.  Defendant UPRR's breach of this duty contributed to the legal
and proximate cause of Plaintiff's accident, or was a factor that
contributed to the overall unsafe operation of the train in
question, and the resulting accident.

(7)  Defendant UPRR has a legal duty to assure that all lights on the lead
locomotive are functional and operating when a locomotive is in
service.

10

Case 2:03-cv-00056-SWW    Document 1    Filed 04/24/03    Page 83 of 97

    a. UPRR breached this duty, in that two (2) of the (3) lights on the lead locomotive that struck Courtney Eskew were inoperable at the time of the collision.

## C.    <u>As to Train Operations</u>

(1)   Defendant UPRR has a duty to exercise reasonable care in the operation of its trains so as to avoid injuring or killing members of the public.

    a. Defendant UPRR breached this duty in it failed to exercise reasonable care in the operation of its train, including but not limited to those train operation errors as set forth herein.

    b. Defendant UPRR's breach of this duty contributed to the legal and proximate cause of Plaintiff's accident, or was a factor that contributed to the overall unsafe operation of the train in question, and the resulting accident.

(2)   Defendant UPRR's train crew had a duty to keep a proper lookout prior to the accident.

    a. The train crew involved in this accident, acting within the scope of its employment with defendant UPRR, breached this duty in that it failed to keep a proper lookout prior to the accident.

    b. The breach of this duty by the train crew, as UPRR employees, contributed to the legal and proximate cause of Plaintiff's accident, or was a factor that contributed to the overall unsafe operation of the train in question, and the resulting accident.

(3)   Defendant UPRR has a duty to identify specific local safety hazards and instruct its train crews and other employees to identify specific local hazards.

    a. Defendant UPRR breached this duty in that it has failed to identify specific local safety hazards that existed at the Wilson Street crossing and has failed to train its crews and other employees how to identify specific local safety hazards at crossings like and including the Wilson Street crossing.

11

      b. Defendant UPRR's breach of this duty contributed to the legal and proximate cause of Plaintiff's accident, or was a factor that contributed to the overall unsafe operation of the train in question, and the resulting accident.

(4)   Defendant UPRR has a duty to comply with federal regulations that require UPRR to maintain an in-service event recorder in any lead locomotive traveling in excess of 30 mph.

      a. Defendant UPRR has breached this duty in that it has no evidence that the event recorder on board the lead locomotive complied with 49 C.F.R. § 229.5(g) at the time of the accident, yet it had operated its train in excess of 30 mph prior to this collision.

      b. Defendant UPRR's breach of this duty contributed to the legal and proximate cause of Plaintiff's accident, or was a factor that contributed to the overall unsafe operation of the train in question, and the resulting accident.

(5)   Defendant UPRR has a duty to comply with federal regulations concerning track class speed restrictions.

      a. Defendant UPRR has breached this duty in that it operated its train in excess of the maximum speed limit set forth by federal regulations.

      b. Defendant UPRR's breach of this duty contributed to the legal and proximate cause of Plaintiff's accident, or was a factor that contributed to the overall unsafe operation of the train in question, and the resulting accident.

(6)   The two members of the train crew, acting within their capacities as agents and employees of Defendant UPRR, and within the scope of their employment with said defendant, have a duty to slow or stop their trains to avoid a specific, individual hazard at the Wilson Street crossing.

      a. The train crew, and therefore Defendant UPRR, breached this duty in that it did not slow or stop the train so as to avoid a

specific, individual hazard at the Wilson Street crossing prior to Plaintiff's accident.

b. UPRR's breach of this duty contributed to the legal and proximate cause of Plaintiff's accident, or was a factor that contributed to the overall unsafe operation of the train in question, and the resulting accident.

(7)     Defendant UPRR has a duty to instruct its train crews on the appropriate circumstances under which they should be prepared to brake, slow, or stop the train to avoid a specific, individual hazard at crossings like and including the Wilson Street crossing.

a. Defendant UPRR breached this duty in that it failed to instruct its train crews on the appropriate circumstances under which they should be prepared to brake, slow, or stop to avoid a specific, individual hazard at railroad crossings. Defendant UPRR knows the risks to the motoring public created by its failure to instruct its train crews about the duty to slow or stop the train to avoid a specific individual hazard at crossings like and including the Wilson Street crossing. Yet, Defendant UPRR has intentionally elected to not instruct its crews about these duties. Because of this inadequate training, the crew approached this crossing, oblivious to the specific, individual safety hazards at this crossing.

b. Defendant UPRR has breached this duty in that it has condoned the failure of its employees to slow or stop the train to avoid specific, individual hazards at railroad crossings. Defendant UPRR has intentionally elected to train its crews to ignore the hazards to the motoring public caused by the failure to slow or stop the train to avoid specific individual hazards at railroad crossings. Defendant UPRR has a routine practice of condoning its employees' failure to slow or stop the train to avoid specific individual hazards at railroad crossings.

c. Defendant UPRR's breach of this duty contributed to the legal and proximate cause of Plaintiff's accident, or was a factor that contributed to the overall unsafe operation of the train in question, and the resulting accident.

13

(8)  Defendant UPRR has a duty to work with both the local road authority to report any unsafe or dangerous conditions observed by their train crews at railroad crossings, like and including the Wilson Street crossing.

   a.  Defendant UPRR has breached this duty in that it has failed to work with the local road authority to report, notify and ultimately correct the numerous defects at the Wilson Street crossing, including but not limited to those stated herein.

   b.  Defendant UPRR's breach of this duty is a factor that contributed to the existence of numerous defects at the Wilson Street crossing and the surrounding right of way, including but not limited to those stated herein, which combined to create the overall dangerous condition of this crossing, and thus, the causation of this accident.

(9)  Defendant UPRR has a duty to record and report any near accidents or "near hits" at the Wilson Street crossing to proper authorities.

   a.  Defendant UPRR breached this duty in that neither UPRR nor its crews or employees reported any near accidents or near hits at the Wilson Street crossing to proper authorities.

   b.  Defendant UPRR's breach of this duty is the proximate and legal cause of this accident, or was a factor that contributed to this accident.

F(Smith)    **D.    As to the Management of UPRR, its Conduct and Policies**

(1)  Defendant UPRR has a duty to properly supervise and monitor the safety practices of its train crews, maintenance of way crews and the supervisors of those crews, and to further implement policies and procedures which would better insure the safety of the motoring public.

   a.  Defendant UPRR breached this duty in that it has failed to properly train, educate and disseminate information to its maintenance crews, train crews, and their supervisors regarding inadequate sight distances at railroad crossings, the dangers

14

posed by inadequate vegetation control, and the need to operate UPRR's locomotive in a reasonable and prudent manner so as to prevent injury and loss of life.

b. Defendant UPRR's breach of this duty is the proximate and legal cause of this accident, or is a factor that contributed to the dangerous condition of the Wilson Street crossing.

(2) Defendant UPRR has a duty to entrust the maintenance of the Wilson Street crossing to individuals who are properly instructed on issues concerning the safety of the motoring public.

a. Defendant UPRR breached this duty in that it has entrusted the maintenance of the Wilson Street crossing to individuals who were not properly instructed or trained on issues of safety for the motoring public.

b. Defendant UPRR has breached this duty in that it has a policy and/or custom of failing or deliberately refusing to adequately train its maintenance crews and train crews regarding the dangers posed by inadequate sight distances, signage, crossing maintenance, and other dangerous conditions as set forth in previous allegations herein.

c. Defendant UPRR's breach of this duty is the proximate and legal cause of this accident, or is a factor that contributed to the dangerous condition of the Wilson Street crossing.

(3) Defendant UPRR has a duty to identify specific local hazards and train its train crews and other employees to identify specific local hazards.

a. Defendant UPRR breached this duty in that it has negligently failed, or deliberately chosen not to identify specific local hazards, and has failed or deliberately chosen not to train its train crews and other employees to identify specific local hazards, or to communicate such problems to others.

15

    b. Defendant UPRR's breach of this duty is the proximate and legal cause of this accident, or is a factor that contributed to the dangerous condition of the Wilson Street crossing.

(4)   Defendant UPRR has a duty to instruct its crews and other employees and agents of all appropriate steps they may take to avoid accidents at grade crossings, thus reducing the risk to the motoring public, including Courtney Eskew.

    a. Defendant UPRR breached this duty in that it has intentionally instructed its crews and other employees that there is nothing the railroad can do to prevent accidents or reduce risks to the motoring public at railroad grade crossings, despite the knowledge of UPRR management that such assertions are false.

    b. Defendant breached this duty in that its management knows that lights and gates are affordable, cost effective guarding devices that have proven to be 90% effective in preventing grade crossing collisions. However, despite this knowledge, UPRR's management has intentionally misrepresented the effectiveness of guarding devices, and has engaged in conduct designed to limit their installation.

    c. Defendant UPRR breached this duty in that its management has instructed its supervisors, agents and employees in such a manner to create a belief that the railroad has absolutely no duty to provide safe and adequate crossings for the motoring public.

    d. Defendant UPRR's breach of this duty is the proximate and legal cause of this accident, or is a factor that contributed to the dangerous condition of the Wilson Street crossing.

(5)  .Defendant UPRR has a duty to evaluate crossings and work with the state road authority to improve the safety of the crossing for motorists, including Courtney Eskew.

    a. Defendant UPRR has breached this duty in that it has elected to totally ignore its joint obligations concerning crossing safety, by failing to accurately evaluate the Wilson Street crossing to improve its safety.

04/07/2003  14:19    501-843    18

JENNIFER BROWN

PAGE  19

  b. Defendant UPRR's breach of this duty is the proximate and legal cause of this accident, or is a factor that contributed to the dangerous condition of the Wilson Street crossing.

(6) Defendant UPRR has a duty to evaluate grade crossings and provide and/or gather all reasonable information necessary to determine the need for additional warning devices at crossings such as the Wilson Street crossing.

  a. Defendant UPRR has breached this duty in that it has failed or deliberately refused to evaluate grade crossings, including the Wilson Street crossing, and has failed or deliberately refused to provide or gather information to determine the need for additional warning devices at crossings, including the Wilson Street crossing.

  b. Defendant UPRR has breached this duty in that it has developed a corporate practice that discourages the reporting of problems at crossings like the Wilson Street crossing, resulting in conditions that endanger motorists such as Courtney Eskew.

  c. Defendant UPRR has breached this duty in that it has refused to accept its common law duty to evaluate railroad crossings to determine safety problems that endanger the motoring public, including Courtney Eskew. Instead, Defendant UPRR has routinely misreported and ignored safety problems and hazardous conditions at grade crossings, including the Wilson Street crossing.

  d. Defendant UPRR's breach of this duty is the proximate and legal cause of this accident, or is a factor that contributed to the dangerous condition of the Wilson Street crossing.

(7) Defendant UPRR has a duty to work jointly with the local road authorities to provide adequate and safe crossings for the motoring public, including Courtney Eskew.

  a. Defendant UPRR has breached this duty in that it has failed or deliberately refused to work with the local road authority to

17

provide adequate and safe crossings for the motoring public, including Courtney Eskew.

b. Defendant UPRR breached this duty in that it has elected to ignore its joint obligations (with state and local officials) concerning crossing safety by failing to evaluate the crossing and work with local highway authorities to improve the safety of the crossing.  Instead, Defendant UPRR has taken an adversarial position, requiring local road authorities to fight against the railroad to obtain public safety accommodation.

c. Defendant UPRR's breach of this duty is the proximate and legal cause of this accident or is a factor that contributed to the dangerous condition of the Wilson Street crossing.

(8)   Defendant UPRR had a duty to supervise and monitor the safety practices of its train crews, maintenance of way crews, and supervisors of those crews and to further implement policies and procedures which would better ensure the safety of the motoring public, including Courtney Eskew.

a. Defendant UPRR has breached this duty in that it has failed or deliberately refused to supervise and monitor the safety practices of its train crews, maintenance of way crews, and supervisors of those crews, and to further implement policies and procedures which would better ensure the safety of the motoring public, including Courtney Eskew.

b. Defendant UPRR knew or should have known that this policy and/or custom of failing to supervise and monitor the safety practices of its train crews, maintenance of way crews, and supervisors of those crews, and to further implement policies and procedures which would better ensure the safety of the motoring public would result in unnecessary serious injury and/or loss of life to the motoring public, including Courtney Eskew.

c. The breach by Defendant UPRR of these duties is a factor that contributed to the existence of numerous defects at the Wilson Street crossing and adjacent right of way, including but not

18

limited to those stated herein, which combined to create the overall dangerous condition of this crossing and the causation of this accident.

**E.  Intentional, Willful, and Wanton Conduct**

(1)    The customs, policies, and conduct of Defendant UPRR in all the aforementioned allegations were willful, wanton, and demonstrate a reckless disregard for the safety of the motoring public, including Courtney Eskew.

(2)    Defendant UPRR has intentionally elected to disregard its legal duties owed to the motoring public, including Courtney Eskew, and has deliberately chosen to undermine and delay the installation of protective devices at crossings such as the Wilson Street crossing, for the sole purpose of financial gain.

(3)    Many years before this collision, lights and gates had been approved for this crossing. However, as a condition to installing lights and gates at the Wilson Street crossing, Defendant UPRR demanded that the City of Wynne close the "O" Street crossing to the west. It was in UPRR's financial interests to close the other crossing. So, rather than working to make the Wilson Street crossing more safe for the motoring public, UPRR placed its own financial interests above public safety, and for years continued to delay the installation of lights and gates. UPRR has thus denied motorists of the best possible warning devices at the Wilson Street crossing.

(4)    When the City of Wynne did not yield to UPRR's demands, UPRR delayed the installation of lights and gates for years, as punishment. The delay caused multiple needless injuries and deaths before Courtney Eskew's accident, clearly demonstrating UPRR's callous disregard for human life.

(5)    Defendant UPRR has actual knowledge that defects at crossings, including but not limited to those stated herein, greatly increase the chances of death or injury to motorists like Courtney Eskew at highway grade crossings, yet defendant UPRR deliberately chose not to take any action to cure such defects or otherwise protect motorists

19

such as Courtney Eskew despite its knowledge of such crossing defects.

(6) Defendant UPRR knew of prior accidents at the Wilson Street crossing, yet deliberately chose not to take any measures to investigate, remedy or otherwise take any reasonable steps to prevent the re-occurrence of similar accidents. Yet despite this knowledge, and the knowledge of multiple prior accidents, Defendant UPRR deliberately chose not to make any remedy in the many crossing defects at the Wilson Street crossing, including, but not limited to those stated herein. Such inaction, with the knowledge of defects present at the Wilson Street crossing, demonstrates a reckless disregard for the safety of others, including Courtney Eskew.

(7) Defendant UPRR knows of proven, effective steps it can take to protect motorists such as Courtney Eskew at crossings such as the Wilson Street crossing. However, rather than taking any step to promote safety, Defendant UPRR has made a deliberate choice to misinform the public and governmental agencies that UPRR cannot do anything more to protect against grade crossings collisions.

(8) Defendant UPRR has made an intentional decision to ignore its common law duty to provide safe and adequate grade crossings, in hopes of obtaining public funding of all safety endeavors. UPRR's efforts to obtain public funding are directed by the motivation of increasing profits, supplementing its own maintenance budget, and creating the affirmative defenses of federal preemption, all at the cost of public safety, and in reckless disregard of human safety, including that of Courtney Eskew.

(9) Defendant UPRR has no effective crossing safety program that rewards safety initiatives; nor does it promote research and development for improved safety at crossings; nor does it promote employee participation in public safety issues. The culture created by the Defendant's crossing safety policies significantly increases the risk of injury and death to the motoring public including Courtney Eskew, and is done in reckless disregard for the safety of the motoring public.

20

(10) Defendant UPRR has chosen to approach crossing safety from the standpoint that it cannot and will not do anything in terms of crossing safety unless forced to do so by specific statutes and regulations. Defendant UPRR has made a conscious decision that it is cheaper to be sued and pay compensatory damages than to remedy the dangerous conditions present at crossings like Wilson Street.

(11) Prior accidents, near misses, obstructed visibility, and horn violations at this crossing and those in the immediate vicinity should have triggered the correction of safety deficiencies at the crossing. However, the intentional misrepresentation of crossing conditions and operating practices, concealment of other relevant information about safety problems and obstruction of the truth about accident causation by UPRR have all combined to increase the danger to a motorist at this crossing. Defendant UPRR has knowingly elected to ignore, misrepresent and conceal basic safety needs as a part of a plan to cut operating and maintenance costs, to the detriment of the motoring public, including Plaintiff here.

(12) Immediately after the collision complained of herein, the UPRR crew was told by the first person on the scene that Plaintiff's head had been, and was being crushed between the vehicle's door post and head rest. The crew was told to back up the train slightly, so as to relieve the pressure on Courtney's skull. The crew refused. Despite repeated pleas, the crew chose to follow UPRR's rules—which are designed to protect UPRR's financial interests—rather than trying in any way to reduce the suffering and injuries of the severely injured Courtney Eskew.

II.    **Claims Against Defendant Bruce Brown**

The collision and resulting damages to Plaintiff was directly and

proximately caused by the negligence and intentional conduct of Defendant Bruce

Brown, to wit:

21

· 04/07/2003  14:19    501-843    48              JENNIFER BROWN                                    PAGE  23

A.    Before his retirement and at times relevant to the creation and continuation of the defects and dangers at the Wilson Street crossing, Defendant Bruce Brown was employed as the Director of Track Maintenance with Defendant UPRR.

B.    Before his retirement and at times relevant to the creation and continuation of the dangers at the Wilson Street crossing,, Defendant Bruce Brown was the Director of Track Maintenance for the Wynne Subdivision of the Union Pacific line, which includes the Wilson Street crossing where the accident in this matter occurred.

C.    As the Director of Track Maintenance, Defendant Bruce Brown had a duty to ensure that maintenance of the Wilson Street crossing and UPRR's right of way was in compliance with the laws and regulations of the State of Arkansas and the Federal Government, as well as the UPRR's own operating procedures.

D.    Defendant Brown breached this duty in that he failed to maintain the Wilson Street crossing in compliance with State and Federal laws and regulations, as well as UPRR's own operating procedures, which resulted in the numerous defects that existed at the Wilson Street crossing at the time of this accident, including but not limited to those stated herein.

E.    Defendant Brown's breach of this duty is the proximate and legal cause of this accident, or was a factor that contributed to the dangerous condition of the Wilson Street crossing.

III.    **Claims against Defendant Charles Felkins**

The collision and resulting damages to Plaintiffs were directly and proximately caused by the negligence and intentional conduct of Defendant Charles Felkins, to wit:

A.    At all times relevant to the creation and continuation of the defects and dangers at the Wilson Street crossing, Defendant Charles Felkins

22

was employed as the Manager of Industry and Public Projects with Defendant UPRR.

B.    At all times relevant to the creation and continuation of the dangers and defects at the Wilson Street crossing,, Defendant Charles Felkins was the Manager of Industry and Public Projects for the Wynne Subdivision of the Union Pacific line, which includes the Wilson Street crossing where the accident in this matter occurred.

C.    As the Manager of Industry and Public Projects, Defendant Felkins had a duty to ensure that the Wilson Street crossing was one that could be negotiated with safety by the motoring public.  In fact, the combination of dangerous conditions at the crossing and the long history of injuries and deaths to motorists there should have caused Defendant Felkins to take measures to make the crossing safe.

D.    Defendant Felkins breached this duty in that he failed to recognize the dangers and history of the crossing, and properly evaluate it so as to protect the motoring public.

E.    Defendant Felkin's breach of this duty is the proximate and legal cause of this accident, or was a factor that contributed to the resulting accident.

IV.   **Damages**

That as a proximate result of the negligence of the above Defendants, or, as a result of their combined negligence, and of the reckless and/or intentional conduct of Defendant UPRR, the Plaintiff was injured and damaged in the following particulars, to-wit:

23

(a)  Plaintiff Courtney Eskew sustained multiple traumas, including but not limited to a traumatic brain injury, more specifically, a right temporal/occipital open depressed skull fracture, with a longitudinal tear of the transverse sinus on the right. This injury has left her with recurring panic attacks, short-term memory loss, and other associated mental and emotional injuries, all basically causing her to be incapable of coping with life as an adult (all of which have necessitated the guardianships now in place for Courtney's benefit); and all of which are permanent;

(b)  Plaintiff's injuries have caused her pain, suffering, and mental and emotional anguish in the past, and will cause her same in the future;

(c)  Plaintiff's injuries have caused her to incur significant medical bills and related expense in the past; and will necessitate expenditure of future sums for medical and medical- related expenses;

(d)  Plaintiff has lost income in the past, and has a loss of earning capacity; for all of which she should be compensated.

V.  **Jury Trial**

Plaintiffs demand a jury trial.

**WHEREFORE**, Plaintiff Cross County Bank, as Guardian of the Estate of Courtney Eskew, and Helen Kennon, as Guardian of the Person of Courtney Eskew, pray that they do have and recover the following:

(1)  Judgment for compensatory damages against the Defendants Union Pacific Railroad Company, Bruce Brown and Charles Felkins, jointly

24

and severally, for a sum in excess of the minimum required for diversity jurisdiction in federal cases;

(2)  Judgment for punitive damages against the Defendant UPRR for its intentional, willful, wanton conduct in reckless disregard for the safety of the public;

(3)  And for all other proper relief.

**EASLEY, HICKY & HUDSON**
Attorneys for Plaintiffs

By: _____
B. Michael Easley (74041)
Post Office Box 1115
Forrest City, AR 72336-1115
(870) 633-1447

IN THE CIRCUIT COURT OF CROSS COUNTY, ARKANSAS
CIVIL DIVISION

THE CROSS COUNTY BANK, GUARDIAN
OF THE ESTATE OF COURTNEY ESKEW,
and HELEN KENNON, GUARDIAN OF THE
PERSON OF COURTNEY ESKEW                                    PLAINTIFFS

VS.                              NO. CV-2003-57

UNION PACIFIC RAILROAD COMPANY,
BRUCE BROWN and CHARLES FELKINS                            DEFENDANTS


### NOTICE OF FILING OF NOTICE OF REMOVAL

COME NOW the Defendants, Union Pacific Railroad Company, Bruce Brown and Charles

Felkins ("Defendants"), pursuant to 28 U.S.C. §§ 1441 *et seq.*, and give notice that they have

removed the above-captioned case to the United States District Court for the Eastern District of

Arkansas, Eastern Division by filing a Notice of Removal with the United States District Court on

April 24, 2003. A copy of the Notice of Removal is attached hereto and incorporated herein by

reference for filing.

Dated this _____ day of _____, 2003.



EXHIBIT
2

Respectfully submitted,

WILLIAM H. SUTTON (59018),
SCOTT H. TUCKER (87176) and
JOSEPH P. McKAY (99006)
2000 Regions Center
400 West Capitol Avenue
Little Rock, Arkansas 72201-3493
501-376-2011

Attorneys for Defendants Union Pacific
Railroad Company, Bruce Brown and
Charles Felkins

By: _____
       SCOTT H. TUCKER, #87176

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been served on the following counsel of record by placing a copy of same in the United States mail, properly addressed and postage pre-paid this _____ day of _____, 2003:

Mr. B. Michael Easley
Post Office Box 1115
Forrest City, Arkansas 72336-1115

_____
SCOTT H. TUCKER